STATE OF CONNECTICUT *v.* ALBERT INDRISANO
(14631)

PETERS, C. J., BORDEN, BERDON, KATZ and FOTI, Js.

Argued April 28, 1993—decision released April 5, 1994

*Edward F. Hennessey,* with whom were *Linda L. Morkan* and, on the brief, *Louise Van Dyck, Sally S. King* and *Michael G. Zuk,* for the appellant (defendant).

*Rita M. Shair,* assistant state's attorney, with whom were *Eugene Callahan,* state's attorney, and, on the brief, *Warren Murray,* assistant state's attorney, for the appellee (state).

BORDEN, J. The dispositive issue of this appeal is whether certain portions of the disorderly conduct statute, namely, General Statutes § 53a-182 (a) (1) and (2),[1]

---

[1] General Statutes § 53a-182 provides in pertinent part: "DISORDERLY CONDUCT: CLASS C MISDEMEANOR. (a) *A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person;* or (3) makes unreasonable noise; or (4) without lawful authority, disturbs any lawful assembly or meet-

are unconstitutionally vague under the fourteenth amendment to the United States constitution. The defendant, Albert Indrisano, was convicted, after a court trial, of disorderly conduct in violation of General Statutes § 53a-182 (a) (1) and (2).[2]

The defendant appealed to the Appellate Court from the judgment of conviction. The Appellate Court rejected the defendant's constitutional claims that the statute is vague on its face and as applied to him, on the grounds that the defendant had failed to raise these claims at trial and that the appellate record was inadequate to review them. *State* v. *Indrisano,* 29 Conn. App. 283, 287, 613 A.2d 1375 (1992).[3] The Appellate Court also rejected the defendant's nonconstitutional claims, namely, that the evidence presented at trial was insufficient to support his conviction, that the trial court had improperly rejected his claim of permissible use of force in defense of stolen property, and that the trial court

ing of persons; or (5) obstructs vehicular or pedestrian traffic; or (6) congregates with other persons in a public place and refuses to comply with a reasonable official request or order to disperse." (Emphasis added.)

[2] Although the information charged the defendant only with "Disorderly Conduct . . . in violation of General Statute No. 53a-182," in the Appellate Court and in this court, both the state and the defendant have agreed that the defendant was convicted only under § 53a-182 (a) (1) and (2). Indeed, these are the only provisions that match the trial court's findings, and they are the only provisions that arguably pertain to the defendant's conduct. We consider this case, therefore, on the basis that the defendant was charged and convicted under only those two provisions of § 53a-182.

[3] The Appellate Court based its decision on the first requirement stated in *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), for prevailing on appeal on unpreserved constitutional claims. *Golding* provides that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) *the record is adequate to review the alleged claim of error;* (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis added.) Id.

had improperly excluded certain statements on grounds of hearsay. Id. Accordingly, the Appellate Court affirmed the defendant's conviction.

We granted the defendant's petition for certification to appeal limited to the following issues: "(1) Was the Appellate Court correct in concluding that the record was insufficient, pursuant to *State* v. *Golding,* 213 Conn. 233 [567 A.2d 823] (1989), to permit adequate appellate review of the defendant's claims that, on its face and as applied, General Statutes § 53a-182 was void for vagueness under the state and federal constitutions? (2) Is General Statutes § 53a-182 void for vagueness on its face and as applied to this case, under the state and federal constitutions?"[4] *State* v. *Indrisano,* 224 Conn. 914, 617 A.2d 168 (1992). We reverse the judgment of the Appellate Court and remand the case for a new trial.

The Appellate Court set forth the relevant facts: "On September 26, 1988, David Andrews Printing [Andrews], a Norwalk business, entered into a lease agreement

[4] We decline to review the defendant's state constitutional claim that the statute is void for vagueness under article first, § 8, of the Connecticut constitution, however, because he has failed to present an independent analysis. See *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991); *State* v. *Mercer,* 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988). We also note that we have not examined the statute for first amendment overbreadth because the defendant has not raised an overbreadth challenge. Although vagueness and overbreadth challenges are closely related, they are not identical. See, e.g., L. Tribe, American Constitutional Law (2d Ed. 1988) § 12-32, p. 1033.

The dissent misses this last point. Thus, the principal cases on which the dissent relies for its analytical structure; *Houston* v. *Hill,* 482 U.S. 451, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987); *State* v. *Ball,* 226 Conn. 265, 627 A.2d 892 (1993); and *Gooding* v. *Wilson,* 405 U.S. 518, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1972); are overbreadth cases, and involve vagueness claims only tangentially, if at all.

Similarly, the dissent's contention that the overlap in the language of General Statutes §§ 53a-182 and 53a-181a grants prosecutors an unconstitutional degree of discretion is not a part of this appeal. The issue has never been raised or briefed by either party.

with the Eaton Financial Corporation [Eaton] of Massachusetts for the use of a copy machine. The agreement provided, inter alia, that Eaton, as lessor, retained the right to repossess the machine in the event that Andrews defaulted on the required payments. After Andrews compiled a history of delinquent payments, Eaton gave notice in January, 1991, that the Norwalk business was again late in making payment and demanded the return of the copier. Eaton then instructed the defendant [an employee] either to collect the outstanding debt or to repossess the machine. On January 22, 1991, the defendant traveled to Norwalk to carry out his instructions.

"Andrews' office space included a common area shared with another tenant, Bonnie Orgovan. Andrews had placed the copy machine in this common area for its exclusive use. At 10 a.m., the defendant entered the common area and encountered Orgovan. He explained that he had come to collect the overdue payments or, alternatively, take possession of the copier. Gordon Anderson, also present in the common area, testified that the defendant entered the room waving a clipboard and that he was 'very strident.' Orgovan then explained to the defendant that the owners were unavailable but would return shortly. Orgovan resumed her work and left the defendant in the common area with Anderson and the copy machine.

"The defendant then telephoned Eaton and, after receiving permission to repossess the machine, unplugged it and began dragging it backward toward the door. When Orgovan realized what the defendant was doing, she reentered the common area, demanding that he await the return of Andrews' owners. Moreover, she positioned herself between the defendant and the door, which she locked, to prevent him from leaving with the copier. At this point, the defendant exclaimed, 'God damn, I don't have to wait. God damn

it!' Directing his attention to Anderson, the defendant said, 'You, old man, stay out of this.' Determined to leave, however, the defendant physically wedged Orgovan away from the door by using his shoulders and buttocks. As soon as this physical contact ensued, Anderson called the police and the confrontation immediately ceased. The entire incident lasted about ten minutes." *State* v. *Indrisano,* supra, 29 Conn. App. 284–86.

The trial court found that the defendant had been strident and impatient in his efforts to repossess the machine, and that he had refused reasonable requests to wait until the lessee arrived. The court also found that the defendant had used unreasonable physical force against Orgovan as he had tried to pull the machine through the door. Accordingly, the trial court concluded that the defendant had violated § 53a-182 (a) (1) and (2). See footnote 2. This appeal followed.

I

We first address the question of the reviewability of the defendant's claim of unconstitutional vagueness. Because the claim was not raised at trial, it falls within the purview of *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), which provides in part that a defendant cannot prevail on a constitutional claim unless the record is adequate to consider the claim. See footnote 3. The Appellate Court determined that the record was inadequate under the first prong of *Golding.* We disagree.

To enable us to review a claim that a statute is facially vague, the record needs to reflect only the fact that the defendant was convicted under the statute in question. To enable us to review a claim that a statute is vague as applied, the record must further reflect the conduct that formed the basis of the defendant's conviction. The record is sufficient to enable us to perform both of these tasks. We therefore advance our analy-

sis to the third prong of *Golding*, namely, whether the defendant was deprived of his constitutional right to a fair trial because either § 53a-182 (a) (1) or (2) is unconstitutionally vague on its face or as applied to the defendant's conduct.

## II

The defendant claims that § 53a-182 (a) (1) and (2) are unconstitutionally vague on their face and as applied to his conduct. We agree in part and disagree in part. We conclude that: (1) § 53a-182 (a) (1) is not subject to facial attack and is not impermissibly vague as applied to the defendant's conduct; (2) § 53a-182 (a) (2), as it existed at the time of the defendant's conduct, was impermissibly vague on its face and, therefore, may not validly be applied to the defendant; and (3) it is nonetheless appropriate to apply interpretive gloss to § 53a-182 (a) (2) so as to render it sufficiently clear for future cases, and thus, preserve its constitutionality. Because the defendant's conviction rested on a subdivision of the statute that cannot validly be applied to him, however, we reverse the conviction and remand the case for a new trial under § 53a-182 (a) (1).[5]

---

[5] The dissent accuses us of performing "plastic surgery" on the statute in order to save its constitutionality. We disagree; arthroscopic surgery, perhaps, but not plastic. In interpreting the statute as we have, we are properly performing our judicial duty to interpret a statute so as to preserve, rather than destroy, its constitutionality.

It is ironic that the dissent, while complaining that we are making a new law rather than "enforc[ing] that which was enacted by the legislature," would, under the guise of such "enforcement," prefer instead to invalidate the entire statute, including parts thereof that have not been applied to the defendant's conduct and are not even arguably applicable to that conduct. In this connection, the dissent's reliance on *State* v. *Schriver*, 207 Conn. 456, 542 A.2d 686 (1988), is misplaced.

In *Schriver*, the court was asked to expand on "an authoritative judicial gloss that limit[ed] the types of *physical* harm prohibited by [General Statutes] § 53-21 to instances of deliberate, blatant abuse"; (emphasis added) id., 466; so as to include conduct that "created a cognizable risk of mental injury to the victim." Id. In that posture, we declined to do so. Moreover,

Certain fundamental principles of constitutional vagueness jurisprudence govern our consideration of the defendant's claims. We note at the outset that, because this case involves a vagueness challenge pursuant to the due process clause of the fourteenth amendment to the United States constitution, rather than our state constitution; see footnote 4; we are bound by applicable United States Supreme Court precedents regarding the vagueness principle. We are not free to interpret the federal constitution so as to recognize greater rights than the United States Supreme Court has specifically refrained from recognizing. See *Oregon* v. *Hass,* 420 U.S. 714, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975).

The purpose of the vagueness doctrine is twofold. The doctrine requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforcement. The United States Supreme Court has set forth standards for evaluating vagueness. "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." *Grayned* v. *Rockford,* 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). "[A] law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law." *Baggett* v. *Bullitt,* 377 U.S. 360, 367, 84 S. Ct. 1316,

the alternative to glossing the statute further in that case was not to declare the entire risk of injury statute unconstitutional; it was merely to decline to expand the extent of its coverage beyond its prior scope as defined by a well established body of case law. That is not this case. Thus, our approach in *Schriver* and our approach in this case are consistent in that both approaches afford due respect to the legislative function.

12 L. Ed. 2d 377 (1964); see also *State* v. *Schriver,* 207 Conn. 456, 459, 542 A.2d 686 (1988); *State* v. *Cavallo,* 200 Conn. 664, 670, 513 A.2d 646 (1986).

"Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Grayned* v. *Rockford,* supra, 108–109. Therefore, "a legislature [must] establish minimal guidelines to govern law enforcement." (Internal quotation marks omitted.) *Kolender* v. *Lawson,* 461 U.S. 352, 357–58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); see also *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 591, 590 A.2d 447 (1991).

"Third, but related, where a vague statute abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." (Internal quotation marks omitted.) *Grayned* v. *Rockford,* supra, 109.

"These standards should not . . . be mechanically applied. The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. . . . The Court has . . . expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the [defendant] that his conduct is proscribed. . . . [P]erhaps the most

important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S. Ct. 1186, 71 L. Ed. 2d 362, reh. denied, 456 U.S. 950, 102 S. Ct. 2023, 72 L. Ed. 2d 476 (1982).

In a facial vagueness challenge, we also examine the challenged statute to see if it is impermissibly vague in all of its applications. A statute that is impermissibly vague in all its applications is vague, "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. . . . Such a provision simply has *no* core." (Citation omitted; emphasis in original.) *Smith* v. *Goguen,* 415 U.S. 566, 578, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); see also *Parker* v. *Levy,* 417 U.S. 733, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974); *State* v. *Ball,* 226 Conn. 265, 271, 627 A.2d 892 (1993); *State* v. *Pickering,* 180 Conn. 54, 65, 428 A.2d 322 (1980). Professor Laurence Tribe calls such a statute "perfectly vague." L. Tribe, American Constitutional Law (2d Ed. 1988) § 12-32, p. 1036. A statute may, however, have an unmistakable core meaning of prohibited conduct but, nonetheless, be vague in some of its applications. A defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not raise a facial vagueness challenge to the statute. See *Parker* v. *Levy,* supra.

Our vagueness inquiry—whether facial or as applied—extends only to those portions of the statute that were applied to the defendant in this case. *Smith* v. *Goguen,* supra, 581; *Colten* v. *Kentucky,* 407 U.S. 104, 111 n.3, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972). Thus,

we confine our vagueness analysis to the mens rea language of subsection (a) of the statute, and the conduct specified in subdivisions (1) and (2). See footnote 1.

Further, in evaluating the defendant's challenge to the constitutionality of the statute, we read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it. "We will indulge in every presumption in favor of the statute's constitutionality . . . ." *State* v. *Floyd,* 217 Conn. 73, 79, 584 A.2d 1157 (1991); *State* v. *Breton,* 212 Conn. 258, 269, 562 A.2d 1060 (1989); *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 705, 553 A.2d 596 (1989). In so doing, we take into account any prior interpretations that this court, our Appellate Court and the Appellate Session of the Superior Court[6] have placed on the statute. See, e.g., *Ward* v. *Rock Against Racism,* 491 U.S. 781, 795–96, 109 S. Ct. 2746, 105 L. Ed. 2d 661, reh. denied, 492 U.S. 937, 110 S. Ct. 23, 106 L. Ed. 2d 636 (1989) (United States Supreme Court, in evaluating facial challenge to a state law, will consider any limiting instruction proffered by state court); *State* v. *Tyson,* 195 Conn. 326, 332, 487 A.2d 1091 (1985).

Finally, we may also add interpretive gloss to a challenged statute in order to render it constitutional. "In

[6] The rule of federal vagueness jurisprudence is that prior judicial decisions interpreting a state statute are authoritative if they are decisions of "a court of statewide jurisdiction, the decisions of which are binding upon all trial courts in the absence of a conflicting decision of the [state] Supreme Court . . . ." *Gooding* v. *Wilson,* 405 U.S. 518, 525 n.3, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1972). The Appellate Session of the Superior Court qualifies under this rule. It was certainly a court of statewide jurisdiction, because the Superior Court itself is such. Moreover, the decisions of the Appellate Session, at least those that were published, were binding on our trial court, including the trial session of the Superior Court. Certainly most judges and lawyers considered them to be binding, in the absence of a conflicting decision of this court or the Appellate Court. Indeed, their binding force was the principal reason for their having been published.

construing a statute, the court must search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." *Calfee* v. *Usman,* 224 Conn. 29, 33, 616 A.2d 250 (1992); *State* v. *Campbell,* 224 Conn. 168, 176, 617 A.2d 889 (1992), cert. denied,     U.S.     , 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993).

### III

. With these principles in mind, we turn to the specifics of this case. These principles require that we examine each of the relevant sections of General Statutes § 53a-182 to determine whether the language is: (1) facially vague because it has no core meaning; and (2) vague as applied to the facts of this case.

### A

We begin with the mens rea language of § 53a-182 (a): "A person is guilty of disorderly conduct when, *with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof* . . . ." (Emphasis added.) In accordance with the United States Supreme Court's decision in *Colten* v. *Kentucky,* supra, we conclude that this language is not facially vague if appropriately limited and construed.

*Colten* involved a challenge to Kentucky's disorderly conduct statute with language remarkably similar to the statute at issue in this case.[7] Kentucky Revised Statutes § 437.016 (1) (f) (Sup. 1968) provides: "(1) A person is guilty of disorderly conduct if, *with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof,* he . . . (f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse . . . ." (Emphasis added.)

---

[7] Both the Kentucky and Connecticut disorderly conduct statutes, and many others throughout the nation, are based on Model Penal Code § 250.2 (Proposed Official Draft 1962).

The Kentucky Court of Appeals had upheld Colten's conviction for refusing to obey police orders to leave the scene where the police were issuing a traffic citation to his friend. In order to ensure that the statute did not impede the exercise of constitutional rights, the Kentucky Court of Appeals had, in the same case, construed the statute as follows: "As reasonably construed, the statute does not prohibit the lawful exercise of any constitutional right. We think that the plain meaning of the statute, in requiring that the proscribed conduct be done 'with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof,' is that the specified intent must be the *predominant* intent. Predominance can be determined either (1) from the fact that no bona fide intent to exercise a constitutional right appears to have existed or (2) from the fact that the interest to be advanced by the particular exercise of a constitutional right is insignificant in comparison with the inconvenience, annoyance or alarm caused by the exercise." (Emphasis in original; internal quotation marks omitted.) *Colten* v. *Kentucky*, supra, 108–109, quoting *Colten* v. *Commonwealth*, 467 S.W.2d 374, 377 (Ky. 1971).

The United States Supreme Court approved the Kentucky gloss on the statute and rejected the defendant's assertion that the statute was unconstitutionally vague. The court stated: "The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. We agree with the Kentucky court when it said: 'We believe that citizens who desire to obey the statute will have no difficulty in understanding it . . . .' " *Colten* v. *Kentucky*, supra, 110.

*Colten* v. *Kentucky,* supra, has subsequently been cited with approval by the United States Supreme Court and been used by federal courts to evaluate the facial vagueness of state statutes. See, e.g., *Smith* v. *Goguen,* supra, 581; *Pringle* v. *Court of Common Pleas of Cumberland County,* 604 F. Sup. 623, 627 (M.D. Pa.), rev'd on other grounds, 778 F.2d 998 (3d Cir. 1985); *Squire* v. *Pace,* 380 F. Sup. 269, 275–80 (W.D. Va. 1974), aff'd, 516 F.2d 240 (4th Cir.), cert. denied, 423 U.S. 840, 96 S. Ct. 68, 46 L. Ed. 2d 58 (1975). Furthermore, *Colten* v. *Kentucky,* supra, has been followed by state courts in evaluating state disorderly conduct statutes similar to ours. See, e.g., *State* v. *Reeder,* 18 Ohio St. 3d 25, 479 N.E.2d 280 (1985); *Cincinnati* v. *Hoffman,* 31 Ohio St. 2d 163, 285 N.E.2d 714 (1972); *State* v. *Begins,* 147 Vt. 45, 509 A.2d 1007 (1986).

Although the court in *Colten* v. *Kentucky,* supra, concluded that the statute was not vague as applied, that conclusion implicitly determined that the statute was not facially vague, because a statute that is not vague as applied, a fortiori is not facially vague. See *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* supra. This is because a conclusion that a statute—at least a statute that does not involve a substantial amount of constitutionally protected conduct—is not vague as applied to the facts of a case means that the statute *has* a core meaning, in the sense that it is not impermissibly vague in all of its applications. Id.

Although the statute challenged in *Colten* referred to "public" inconvenience, annoyance or alarm, and our statute is not limited to the "public," the distinction does not substantially alter the meaning of the statute. That difference alone cannot support the conclusion that the mens rea language of the Connecticut disorderly conduct statute is unconstitutionally vague but the language of the Kentucky disorderly conduct statute is not. The United States Supreme Court never

emphasized nor mentioned the word "public" in its analysis. We conclude that if "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," is not impermissibly vague; see *Colten* v. *Kentucky,* supra, 108; then "intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof" is also not impermissibly vague.

In order to ensure that the mens rea language of § 53a-182 passes constitutional muster, we therefore adopt the Kentucky court's gloss on the same statutory language. The intent denoted in § 53a-182 (a) is the predominant intent as defined by the Kentucky Court of Appeals in *Colten* v. *Commonwealth,* supra. To paraphrase, in order to support a conviction for disorderly conduct, the defendant's predominant intent must be to cause inconvenience, annoyance or alarm, rather than to exercise his constitutional rights.

Although this construction satisfies federal due process requirements, we are not precluded from defining the terms further, as a matter of state statutory construction, in order to clarify their meanings and insulate them from potential future challenges. The terms "inconvenience," "annoyance," and "alarm" are relatively elastic, each with a number of distinct meanings. See Webster's Third New International Dictionary. In their most benign interpretations, they may not fit within the intent of the disorderly conduct statute. Because we must construe statutory language strictly to avoid imposing criminal liability where none is intended by the legislature; *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983); we construe these terms further.

If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary. General Statutes § 1-1 (a); see also *Ziperstein* v. *Tax*

*Commissioner,* 178 Conn. 493, 500, 423 A.2d 129 (1979); *State* v. *Lo Sacco,* 12 Conn. App. 481, 490, 531 A.2d 184, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987); *Eanes* v. *State,* 318 Md. 436, 569 A.2d 604 (1990). Webster's Third New International Dictionary includes the following among the meanings of the three statutory terms: "inconvenience"—something that disturbs or impedes; "annoyance"—vexation; a deep effect of provoking or disturbing; and "alarm"—fear; filled with anxiety as to threatening danger or harm. Of the definitions contained in Webster's Third New International Dictionary, these impart the most serious intrusions on the potential recipients of the action and the general public. Limiting the terms in this way is consistent with our duty to impose criminal liability only where it is intended by the legislature. *State* v. *Roque,* supra. In addition, these usages of the terms are most closely associated with the original statutory language of § 53a-182 (a).

Furthermore, we conclude that the legislature intended the language "inconvenience, annoyance, or alarm" to be that perceived by a reasonable person operating under contemporary community standards. The concept of the reasonable person runs throughout the law and the concept of contemporary community standards has roots in obscenity law jurisprudence. Thus, this standard should ensure that a person of ordinary intelligence has reasonable notice of what the law permits or forbids. *Grayned* v. *Rockford,* supra.

To summarize, the mens rea language of § 53a-182 (a) can be formulated more precisely as follows: the predominant intent is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm. In order to sustain a conviction for disor-

derly conduct, the state must begin by demonstrating that the defendant had such a state of mind. This limitation ensures that a person who does not wish to violate § 53a-182 will not inadvertently do so, and that those involved in enforcing and applying the law have sufficient guidance to carry out their duties.

## B

We next turn to subdivision (1) of § 53a-182 (a): "Engages in fighting or in violent, tumultuous or threatening behavior." This subdivision proscribes conduct; it does not describe a mens rea. We conclude that the defendant may not raise a facial challenge to this language. We also conclude that the subdivision is not vague as applied to the defendant.

The defendant may not challenge the facial validity of this language because his conduct was prohibited by its unmistakable core meaning of prohibited conduct. See *Parker* v. *Levy,* supra. That core of prohibited conduct, as gleaned from the statutory language and its authoritative judicial gloss, is *physically* violent and *physically* tumultuous or threatening behavior.

The term "fighting," by its plain meaning, involves physical force. The phrase "violent, tumultuous or threatening behavior" also refers to physical action. If two or more words are grouped together, it is possible to ascertain the meaning of a particular word by reference to its relationship with other associated words and phrases under the doctrine of noscitur a sociis. 2A J. Sutherland, Statutory Construction (5th Ed. Sands 1992) § 47-16; *State* v. *Roque,* supra, 152. Applying this doctrine, the Appellate Court, in *State* v. *Lo Sacco,* supra, construed "violent or threatening behavior"; General Statutes § 53a-181a (a); to mean "conduct which actually involves physical violence or portends imminent physical violence." Id., 491. Similarly, in *State* v. *Duhan,* 38 Conn. Sup. 665, 668, 460 A.2d 496 (1982),

rev'd on other grounds, 194 Conn. 347, 481 A.2d 48 (1984), the Appellate Session of the Superior Court read the term "tumultuous" in connection with its surrounding words, "violent" and "threatening," and held that, because its meaning should be ascertained by reference to those associated words, "yelling and cursing unaccompanied by violent behavior is not prohibited by" § 53a-182 (a) (1). In accordance with these decisions, we conclude that the terms "fighting" and "violent" lend an aspect of physicality to the more nebulous terms "tumultuous" and "threatening." Thus, we conclude that subdivision (1) of § 53a-182 (a) prohibits physical fighting, and physically violent, threatening or tumultuous behavior.

This conclusion is consistent with the "fighting words" limitation that must be applied when the conduct sought to be proscribed consists purely of speech. *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 573, 62 S. Ct. 766, 86 L. Ed. 1031 (1942); *State* v. *Anonymous (1978-4),* 34 Conn. Sup. 689, 695, 389 A.2d 1270 (1978). The *Chaplinsky* doctrine permits the state to prohibit speech that has a direct tendency to inflict injury or to cause acts of violence or a breach of the peace by the persons to whom it is directed. See *Statewide Grievance Committee* v. *Presnick,* 18 Conn. App. 316, 559 A.2d 220 (1989).

Thus, the language of subdivision (1) is not completely devoid of a core meaning. A reasonable person need not "guess" at the meaning of the terms to understand what kind of conduct the legislature intended to proscribe. *Baggett* v. *Bullitt,* 377 U.S. 360, 367, 84 S. Ct. 1316, 12 L. Ed. 2d 377 (1964). A person who desired to be convicted of violating § 53a-182 (a) (1) would have little difficulty identifying conduct that would lead to such a result.

The defendant's conduct in this case clearly fell within this core meaning of the language of § 53a-182 (a) (1). He acted with an unreasonable degree of force in wedging Orgovan away from the door by using his shoulders and buttocks, and this constituted physical violence prohibited by the statute.

Finally, subdivision (1), as previously construed and as further elaborated herein, is not unduly vague as applied to the defendant's conduct in this case. To challenge successfully the vagueness of the statute as applied to the facts of his case, the defendant must prove that the policies advanced by the vagueness doctrine were violated in his case. Specifically, the defendant must show that a reasonable person could not have foreseen that the statute would be applied to his conduct, or that he was the victim of arbitrary enforcement practices. *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 592, 590 A.2d 447 (1991).

There is no question that the authoritative judicial gloss on the statute that preexisted the defendant's conduct applied to him. Moreover, the authoritative gloss that we have added today also applies to his conduct. "[O]nce an acceptable limiting construction is obtained, it may be applied to conduct occurring prior to the construction, see *Poulos* v. *New Hampshire,* 345 U.S. 395 [73 S. Ct. 760, 97 L. Ed. 1105, reh. denied, 345 U.S. 978, 73 S. Ct. 1119, 97 L. Ed. 1392 (1953)]; *Cox* v. *New Hampshire,* 312 U.S. 569 [61 S. Ct. 762, 85 L. Ed. 1049 (1941)]; *Winters* v. *New York,* 333 U.S. 507 [68 S. Ct. 665, 92 L. Ed. 840 (1948)], provided such application affords fair warning to the defendants . . . ." *Dombrowski* v. *Pfister,* 380 U.S. 479, 491 n.7, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965). In *Dombrowski,* the United States Supreme Court indicated that the considerations involved in such a determination include whether the conduct of the defendant is within the reach of an acceptable limiting construction readily to be antici-

pated as a result of the prosecution, and whether the defendant's conduct was the sort of "hard-core" conduct that would obviously be prohibited under any construction. Id., 491–92.

Furthermore, the language of subdivision (1), as previously construed, and as further elaborated herein, does not reach a substantial amount of constitutionally protected conduct. Physical violence is not the kind of expressive conduct that the first amendment is intended to protect. In *Arcara* v. *Cloud Books, Inc.*, 478 U.S. 697, 706–707, 106 S. Ct. 3172, 92 L. Ed. 2d 568 (1986), the United States Supreme Court cautioned against requiring first amendment scrutiny "simply because each particular remedy will have some effect on the First Amendment activities of those subject to sanction. Rather, we have subjected such restrictions to [first amendment] scrutiny only where it was conduct with a significant expressive element that drew the legal remedy in the first place, as in [*United States* v. *O'Brien,* 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672, reh. denied, 393 U.S. 900, 89 S. Ct. 63, 21 L. Ed. 2d 188 (1968) (burning draft card)], or where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity, as in [*Minneapolis Star & Tribune Co.* v. *Minnesota Commissioner of Revenue,* 460 U.S. 575, 103 S. Ct. 1365, 75 L. Ed. 2d 295 (1983) (tax imposed on newsprint and ink)]." The court concluded that "the First Amendment is not implicated by the enforcement of a public health regulation of general application against the physical premises in which respondents happen[ed] to sell books." Id., 707. A disorderly conduct statute that applies generally to prohibit physical violence and physically threatening behavior similarly avoids first amendment difficulties. Therefore, we will not apply "a more stringent vagueness test." See *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* supra, 499.

We conclude that, given the language of subdivision (1) and its authoritative gloss, subdivision (1) is not unduly vague as applied to the defendant's conduct. The Appellate Court's proscription, in *State* v. *Lo Sacco,* supra, against physically violent conduct, as well as the Appellate Session's interpretation of "tumultuous" in *State* v. *Duhan,* supra, gave the defendant fair warning that physically pushing his way through a door against the will of another person might result in criminal liability. Any further gloss we have added has not changed the statute's core meaning so as to deprive the defendant of notice that his conduct was prohibited.

## C

Finally, we turn to subdivision (2) of § 53a-182 (a): "by offensive or disorderly conduct, annoys or interferes with another person." This language also purports to proscribe conduct, rather than to describe a mens rea. We conclude that this language is unconstitutionally vague on its face. Although we also interpret the language to provide it with constitutional content, our interpretation may not be applied to the defendant's conduct in this case. We conclude, therefore, that the defendant's conviction must be reversed to the extent that it was based upon § 53a-182 (a) (2).

The decision of the United States Supreme Court in *Coates* v. *Cincinnati,* 402 U.S. 611, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971), controls this case. In *Coates,* the court sustained a facial vagueness challenge to a statute that made it a criminal offense for "three or more persons to assemble . . . on any of the sidewalks . . . and there conduct themselves in a manner *annoying* to persons passing by . . . ." (Emphasis added; internal quotation marks omitted.) Id., 611.[8] The court

[8] Section 901-L6 of the code of ordinances of the city of Cincinnati (1956) provided: "It shall be unlawful for three or more persons to assemble, except at a public meeting of citizens, on any of the sidewalks, street corners, vacant

held this statute to be unconstitutionally vague because it depended upon an unascertainable standard. "Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, men of common intelligence must necessarily guess at its meaning." (Internal quotation marks omitted.) Id., 614. Because the Supreme Court of the United States has held that the term "annoying," when used to proscribe conduct, is unconstitutionally vague, we are bound as a matter of federal due process to conclude that the term "annoy" as used in § 53a-182 (a) (2) is similarly vague.[9]

Furthermore, we conclude that the phrase "offensive or disorderly conduct" is equally facially vague in the absence of some authoritative gloss that would have rendered it more specific.[10] Conduct that is "offen-

---

lots, or mouths of alleys, and there conduct themselves in a manner annoying to persons passing by, or occupants of adjacent buildings. Whoever violates any of the provisions of this section shall be fined not exceeding fifty dollars ($50.00), or be imprisoned not less than one (1) nor more than thirty (30) days or both."

[9] Thus, we conclude that both *Colten* v. *Kentucky,* 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972), and *Coates* v. *Cincinnati,* 402 U.S. 611, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971), control this case, but on different issues. *Coates* controls on whether the conduct portion of subdivision (2) is impermissibly vague on its face: in the absence of limiting construction, "by offensive or disorderly conduct, annoys or interferes with another person" is facially vague under *Coates* because it provides no standard at all. *Colten* controls, however, on the mens rea language of the statute, because that language is almost identical to language that the United States Supreme Court upheld against a vagueness challenge. Contrary to the suggestion of the dissent, the mens rea and the conduct must be analyzed separately because they are separate elements.

[10] We recognize that in *State* v. *Lo Sacco,* 12 Conn. App. 481, 488–89, 531 A.2d 184, cert. denied, 205 Conn. 814, 533 A.d 568 (1987), the Appellate Court adopted the following definition of "offensive conduct": "conduct which under contemporary community standards is so grossly offensive

sive" to or would be considered "disorderly" by some people would not be so considered by others.[11]

Although the plain language of subdivision (2) is unconstitutionally vague, we may construe it in order to provide constitutional content for the future. Other courts have reached similar conclusions when confronted with such a situation. For instance, in *Matter of Welfare of S. L. J.*, 263 N.W.2d 412 (Minn. 1978), the Minnesota Supreme Court declared facially invalid a disorderly conduct statute that prohibited "offensive, obscene, or abusive language," as well as words that tend to "arouse alarm, anger or resentment in others." The court held that the statute was unconstitutional on its face because, by its own terms, it applied to constitutionally protected speech. The court saved the statute, however, by narrowly construing it to prohibit only fighting words, " 'which by their very utterance inflict injury or tend to incite an immediate breach of the peace.' " Id., 419; see also *State* v. *Huffman,* 228 Kan. 186, 612 P.2d 630 (1980). We employ the same strategy to save the statute in this case.

Subdivision (2) has two components, "by offensive or disorderly conduct," and "annoys or interferes with another person." We analyze each component separately.

The phrase "by offensive or disorderly conduct" may be read in two different ways. First, it may be read in the traditional manner, in which each adjective car-

to a person who actually overhears it or sees it *as to amount to a nuisance."* (Emphasis added.) Although this definition has much appeal, and although we endorse much of its language; see text; we cannot conclude that it is sufficient to avoid a vagueness challenge because the phrase "amounts to a nuisance" injects too much uncertainty into its meaning.

[11] In view of our conclusion that some portions of subdivision (2) are impermissibly vague and that the defendant may not be retried under subdivision (2); see infra; and in view of our further interpretive gloss on all of the language of subdivision (2), we need not decide whether the word "interfere," without a gloss, is unduly vague.

ries a different meaning. Reading it in that manner, however, is problematic because it leads to defining the offense of "disorderly conduct" as "disorderly conduct." Thus, we conclude that the legislature intended each adjective to complement the meaning of the other under the doctrine of noscitur a sociis, described above. 2A J. Sutherland, supra, § 47-16. As in subdivision (1) of the statute, the two adjectives are to be read together as a unitary phrase. When this interpretative mechanism is used, it is possible to build upon the definition of "offensive" in prior cases to arrive at a more precise definition of the phrase.

In *State* v. *Lo Sacco,* supra, 488–89, the Appellate Court adopted the definition of "offensive conduct" originally offered by the Appellate Session in *State* v. *Anonymous (1978-4),* supra, 695: "conduct which under contemporary community standards is so grossly offensive to a person who actually overhears it or sees it as to amount to a nuisance." See footnote 10. We conclude that "disorderly" in the context of this phrase has essentially the same definition as "offensive." Building upon established standards in obscenity law; see, e.g., *State* v. *Gagliardi,* 174 Conn. 46, 381 A.2d 1068 (1977); we therefore advance the following, modified, definition of "offensive or disorderly conduct": conduct that is grossly offensive, under contemporary community standards, to a person who actually overhears it or sees it.

The second component of subdivision (2) is the phrase "annoys or interferes with another person." It is difficult to determine precisely what the legislature intended by the word "annoys." See *Coates* v. *Cincinnati,* supra. Therefore, in order to interpret the phrase, we rely primarily upon the term "interferes." In interpreting this term in the context of this statutory subdivision, we utilize the definition that we used for the term "inconvenience" that we employed in the discus-

sion of the mens rea language of subsection (a) above, namely, "disturbs or impedes the lawful activity of another person."

These two glosses serve to save what would otherwise be unduly vague statutory language. To summarize, therefore, we hold that the language of § 53a-182 (a) (2)— "by offensive or disorderly conduct, annoys or interferes with another person"—means: by conduct that is grossly offensive, under contemporary community standards, to a person who actually overhears or sees it, disturbs or impedes the lawful activity of that person.[12] With these constructions and limitations, subdivision (2) of subsection (a) is not facially vague.

We cannot conclude, however, that the gloss we add today to subdivision (2) provided the defendant with fair warning that his conduct came within the proscription of § 53a-182 (a) (2) as now construed. *Dombrowski* v. *Pfister,* supra, 491. The defendant cannot be retried under subdivision (2) because he could not have anticipated the extent of our construction of the statutory language at the time of his prosecution.

Subdivision (1) of subsection (a), however, is not constitutionally flawed. If the conviction were based on subdivision (1) only, we would affirm the conviction. Because the defendant was convicted under both relevant subdivisions of § 53a-182 (a), however, and because subdivision (2) was unconstitutionally vague at the time of the defendant's conduct leading to his conviction,

---

[12] For example, a person who, acting with the mens rea required by General Statutes § 53a-182 (a), as further explained herein, urinated on the street near a group of persons who were going about their own lawful activity; *People* v. *Cooke,* 152 Misc. 2d 311, 578 N.Y.S.2d 76 (1991); or in a corridor in an apartment building; *Goodmakers* v. *State,* 450 So. 2d 888 (Fla. App. 1984); or who ignited a "stink bomb" in another person's home; Model Penal Code § 250.2, comment 5 (Proposed Official Draft 1962); arguably would come within the language of § 53a-182 (a) (2).

we must vacate the judgment of conviction. Thus, we remand the case for a new trial under § 53a-182 (a) (1) only.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to vacate the judgment of guilty and to remand the case to the trial court for a new trial under General Statutes § 53a-182 (a) (1).

In this opinion PETERS, C. J., KATZ and FOTI, Js., concurred.

BERDON, J., dissenting. In my opinion, the disorderly conduct statute, General Statutes § 53a-182, is unconstitutionally vague under the fourteenth amendment to the United States constitution.

The majority's description of the facts of this case obscures the basis for the defendant's conviction as it pertains to the defendant's speech. The trial court concluded, on the basis of the following evidence, that the defendant violated § 53a-182 while attempting to repossess a copy machine for his employer. First, the trial court found that the defendant had been anxious to repossess the machine before the lessee returned and had "said that he couldn't wait," shouting "God damn, I don't have to wait, God damn it"; and that the defendant told Gordon Anderson "in no uncertain terms to keep his nose out of it" when he said "you, old man, stay out of this." Second, the trial court found that the defendant had pushed Bonnie Orgovan in his attempt to leave with the copier.

In order to satisfy due process protections, a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Grayned* v. *Rockford,* 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1971). Not only is specificity required

to provide this adequate notice; *Papachristou* v. *Jacksonville,* 405 U.S. 156, 162, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972); *State* v. *Schriver,* 207 Conn. 456, 459–60, 542 A.2d 686 (1988); but it is also necessary so that the defendant is not subjected to arbitrary and discriminatory enforcement of the law. *Grayned* v. *Rockford,* supra, 108; *Connecticut Building Wrecking Co.* v. *Carothers,* 218 Conn. 580, 591, 590 A.2d 447 (1991). "A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (Internal quotation marks omitted.) *State* v. *Schriver,* supra, 460.

When a defendant claims that a statute is void for vagueness under the fourteenth amendment to the United States constitution, ordinarily we limit our inquiry to the applicability of the statute to the defendant's conduct. *United States* v. *Mazurie,* 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975); *Connecticut Building Wrecking Co.* v. *Carothers,* supra, 588. The statute should be scrutinized on its face, however, if its language "reaches a substantial amount of constitutionally protected conduct. *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 [102 S. Ct. 1186, 71 L. Ed. 2d 362] (1982); *Kolender* v. *Lawson,* 461 U.S. 352, 359 n.8 [103 S. Ct. 1855, 75 L. Ed. 2d 903] (1983). Criminal statutes must be scrutinized with particular care, e.g., *Winters* v. *New York,* 333 U.S. 507, 515 [68 S. Ct. 665, 92 L. Ed. 840] (1948); those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application. E.g., *Kolender* [v. *Lawson,* supra, 359 n.8]." (Internal quotation marks omitted.) *Houston* v. *Hill,* 482 U.S. 451, 458–59, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987); see

*Gooding* v. *Wilson,* 405 U.S. 518, 521, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1972); *State* v. *Ball,* 226 Conn. 265, 271, 627 A.2d 892 (1993); *State* v. *Cavallo,* 200 Conn. 664, 670, 513 A.2d 646 (1986).

Facial constitutional scrutiny is not limited to statutes that directly regulate speech by their own terms. In *State* v. *Ball,* supra, we noted that "[t]he Supreme Court of the United States 'has applied First Amendment scrutiny to a statute regulating conduct which has the incidental effect of burdening the expression of a particular political opinion.' *Arcara* v. *Cloud Books, Inc.,* 478 U.S. 697, 702, 106 S. Ct. 3172, 92 L. Ed. 2d 568 (1986); see *Texas* v. *Johnson,* 491 U.S. 397, 406–407, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989); *Clark* v. *Community for Creative Non-Violence,* 468 U.S. 288, 297–98, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984); *United States* v. *O'Brien,* 391 U.S. 367, 376–77, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968). We have applied such scrutiny to a statute that 'could, if drafted ambiguously, impinge upon rights of expression protected by the first amendment . . . .' *State* v. *Cavallo,* [supra, 671]."

An ambiguously crafted statute, which could reasonably foster confusion over whether the statute prohibits expression that is protected by the first amendment, "is unconstitutional for two reasons: (1) it may deter individuals from exercising their first amendment freedoms for fear of incurring criminal liability; and (2) it vests enforcement officials with undue discretion to interfere with the right to freedom of speech. . . . Consequently, we carefully scrutinize a statute that is under attack to determine whether its language, as we have construed it, reasonably warrants such uncertainty among members of the public. We will not enforce a statute that could exert such a chilling effect

on first amendment liberties."[1] (Citations omitted.) *State* v. *Cavallo,* supra.

Therefore, we must determine if § 53a-182 (a) reaches a substantial amount of constitutionally protected conduct. I conclude that it does, in light of its inclusion of the following terms and phrases: "tumultuous . . . behavior" in subdivision (1); the entire proscription of subdivision (2) ("by offensive or disorderly conduct, annoys or interferes with another person"); "unreasonable noise" in subdivision (3); and "disturbs" in subdivision (4). Each of these terms and phrases substantially implicates speech. " '[I]t is now settled that constitutionally protected forms of communication include parades, dances, artistic expression, picketing, wearing arm bands, burning flags and crosses, commercial advertising, charitable solicitation, rock music, some libelous false statements, and perhaps even sleeping in a public park.' J. Stevens, *'The* Freedom of Speech,' 102 Yale L.J. 1293, 1298 (1993)." *State* v. *Ball,* supra, 272. Moreover, the terms "obstructs" in subdivision (5) and "congregates" in subdivision (6) of § 53a-182 (a) implicate the right to assemble. See *Coates* v. *Cincinnati,* 402 U.S. 611, 614–15, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971).

Section 53a-182 reaches constitutionally protected speech to at least the same degree as the Connecticut Hunter Harassment Act, codified in General Statutes

---

[1] As Professor Laurence H. Tribe points out, we grant standing to a litigant to challenge such a statute on its face because persons "whose expression is 'chilled' by the existence of an overbroad or unduly vague statute cannot be expected to adjudicate their own rights, lacking by definition the willingness to disobey the law. In addition, such deterred persons may not have standing to obtain affirmative relief, since the hypothetical 'chilling effect' of the mere existence of an overbroad or vague law does not by itself constitute the sort of 'injury-in-fact' which confers standing." L. Tribe, American Constitutional Law (2d Ed. 1988) § 12-32, p. 1035.

§ 53a-183a.[2] *State* v. *Ball,* supra. In *Ball,* we held that "the first amendment threshold is crossed by subsection (b) (1) of § 53a-183a, which criminalizes conduct intended to disturb wildlife while someone is lawfully engaged in hunting, because such interference may be verbal as well as physical." Id.

I conclude that § 53a-182, read as a whole,[3] reaches a substantial amount of conduct protected by the first amendment. The defendant's language in the present case—"God damn, I don't have to wait, God damn it," and "you, old man, stay out of this"—although annoying, offensive and probably noisy—surely is constitutionally protected. "The mere fact that expressive activity causes hurt feelings, offense, or resentment does not render the expression unprotected." *R.A.V.* v. *St. Paul,*     U.S.     , 112 S. Ct. 2538, 2559, 120 L. Ed. 2d 305 (1992) (White, J., concurring). Although it is not necessary for the defendant to show that his

---

[2] General Statutes § 53a-183a provides in relevant part: "(a) No person shall obstruct or interfere with the lawful taking of wildlife by another person at the location where the activity is taking place with intent to prevent such taking.

"(b) A person violates this section when he intentionally or knowingly: (1) Drives or disturbs wildlife for the purpose of disrupting the lawful taking of wildlife where another person is engaged in the process of lawfully taking wildlife . . . ."

[3] I disagree with the majority that the court should consider only the first two subdivisions of General Statutes § 53a-182 (a) in its consideration of whether the statute reaches a substantial amount of constitutionally protected conduct, and in undertaking a facial analysis of the statute's vagueness. The defendant was charged under the statute as a whole, not under any specific provision. Furthermore, the trial court never specified the particular provisions that formed the basis of the defendant's conviction. In addition, the concern of the vagueness doctrine that constitutionally protected first amendment activities not be deterred by vague statutory prohibitions would not be addressed if we merely examined the provisions under which the defendant's conduct arguably fell. Otherwise, a vague or overbroad provision could deter constitutionally protected conduct without ever being subject to challenge.

own first amendment rights have been adversely affected by the statute, the defendant's standing to attack the constitutionality of § 53a-182 on its face is nonetheless enhanced by the fact that his conviction was in part predicated on protected speech. See *Young* v. *American Mini Theatres, Inc.,* 427 U.S. 50, 59, 96 S. Ct. 2440, 49 L. Ed. 2d 310 (1976).

In my facial vagueness analysis of § 53a-182, I begin by examining its prefatory language, which provides that in order to be convicted of disorderly conduct, one must first have the "intent to cause inconvenience, annoyance or alarm" or must "recklessly [create] a risk thereof." The Connecticut Penal Code does not define the terms "inconvenience," "annoyance," or "alarm." Accordingly, we are directed by the legislature to look to the ordinary meaning of these words. "In the absence of an express definition words of a statute are to be given the commonly approved meaning unless a contrary intent is clearly expressed." *DuBaldo* v. *Dept. of Consumer Protection,* 209 Conn. 719, 722, 552 A.2d 813 (1989); see General Statutes § 1-1 (a).

The following definitions provided by Webster's Third New International Dictionary illustrate the vague nature of the language of § 53a-182. First, "inconvenience" is defined as "the quality or state of being inconvenient," and definitions provided for "inconvenient" include "not agreeing," "not suitable," "giving trouble, uneasiness, or annoyance," and "morally unbecoming." Second, "annoyance" is defined as "the act of annoying," and definitions provided for "annoy" include "to irritate with a nettling or exasperating effect especially by being a continuous or repeatedly renewed source of vexation." The definitions of "alarm" range from an "apprehension of an unfavorable outcome" to a "fear or terror resulting from a sudden sense of danger." Each of these words is imprecise

and indefinite, giving rise to numerous interpretations. An individual, presented with words of this nature, simply has no means of ascertaining what is prohibited. In *Coates* v. *Cincinnati, supra*, 614, the United States Supreme Court held that an ordinance prohibiting conduct "annoying to persons passing by" was unconstitutionally vague. "Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his [or her] conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result [persons] of common intelligence must necessarily guess at its meaning."[4] (Internal quotation marks omitted.) Id.

Not only is the language in § 53a-182 inadequate to provide notice of the type of conduct prohibited by the statute, but it is precisely the type of language that allows police officers, judges and juries to rely on their own subjective judgment to define conduct that they find inconvenient, annoying and alarming. Language virtually identical to § 53a-182 was found to be unconstitutionally vague in *Marks* v. *Anchorage,* 500 P.2d

---

[4] I recognize that the word "annoying" in *Coates* v. *Cincinnati,* 402 U.S. 611, 612, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971), referred to prohibited conduct, whereas General Statutes § 53a-182 refers to a mental state, prohibiting certain conduct committed "with intent to cause . . . annoyance." Nevertheless, I fail to see a distinction between these two formulations that would render the former unconstitutionally vague and the latter constitutionally acceptable. "Ordinarily, intent can only be proved by circumstantial evidence; it may be and usually is inferred from the defendant's conduct." *State* v. *Montanez,* 219 Conn. 16, 20, 592 A.2d 149 (1991). In practice, therefore, the only means by which a police officer, prosecutor, court or jury can determine whether a defendant had the *subjective* intent to annoy others is to examine the defendant's *objective* conduct and determine if this conduct is likely, in the subjective view of the law enforcement officer or fact finder, to annoy passersby. This is the same standardless determination held unconstitutional in *Coates.*

644, 652–53 (Alaska 1972). The defective prefatory language at issue in *Marks* provided that one could not be convicted of disorderly conduct absent the "purpose and intent to cause public *inconvenience, annoyance or alarm* or recklessly create a risk thereof." (Emphasis in original.) Id., 653. Noting that the United States Supreme Court had found the word "annoying" to be unconstitutionally vague in *Coates* v. *Cincinnati,* supra, the Alaska Supreme Court concluded that "the words 'inconvenience' and 'alarm' are no less so." *Marks* v. *Anchorage,* supra, 653.

Nevertheless, the majority concludes, in reliance on *Colten* v. *Kentucky,* 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972), that the mens rea predicate language of § 53a-182—"with intent to cause inconvenience, annoyance or alarm or recklessly creating a risk thereof"—passes constitutional muster. I believe *Colten* is inapposite.

The problem with the majority's analysis is that it merely compares the mens rea predicate language of § 53a-182 to that of the Kentucky statute in *Colten.* In *Colten,* however, the United States Supreme Court determined that "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof" passed muster not in isolation, but in conjunction with the conduct-specifying clause of the Kentucky statute—that is, "[c]ongregates with other persons in a public place and refuses to comply with a *lawful* order of the police to disperse . . . ." (Emphasis added; internal quotation marks omitted.) Id., 108, quoting Ky. Rev. Stat. § 473.016 (1) (f) (Sup. 1968).

The statute in *Colten* was a model of clarity compared to the language of § 53a-182 and the language of the *Coates* statute. The conduct clause in *Colten* prohibited

an easy to understand, distinct act: "Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse . . . ." The conduct provisions of § 53a-182, by contrast, are littered with vague, imprecise words. Indeed, much of the language of the first three subdivisions of § 53a-182 (a) parallels language held unconstitutional in *Marks* v. *Anchorage,* supra.[5] The court in *Marks* noted that "[t]he rest of the ordinance is . . . peppered with indefinite words—'threatening,' 'tumultuous behavior,' 'unreasonable noise' . . . . The phrase 'tumultuous behavior,' for example, might encompass conduct ranging from actual violence to speaking in a loud and excited manner . . . ." Id., 653. Accordingly, the Alaska Supreme Court held that the entire statute was void for vagueness. Id. Like the Alaska ordinance, § 53a-182 also bars "threatening," "tumultuous" behavior and "unreasonable noise," and subdivision (2) of subsection (a) establishes a prohibition that is even more vague than the language held unconstitutional in *Coates* v. *Cincinnati,* supra: It is a crime in Connecticut recklessly to "[annoy] or [interfere] with another person" by "offensive or disorderly conduct."

Furthermore, § 53a-182 (a) (4) makes it a misdemeanor to "[disturb] any lawful assembly or meeting of persons" with a reckless mens rea and without "lawful authority." It is instructive to look to *Houston* v. *Hill,* supra. In *Houston,* the United States Supreme Court held unconstitutional on its face an ordinance making it unlawful to *interrupt* a police officer in the performance of his duty because "the ordinance

---

[5] Both statutes, specifying a nearly identical mens rea, prohibit "threatening, violent or tumultuous behavior" and "unreasonable noise." See General Statutes § 53a-182; *Marks* v. *Anchorage,* 500 P.2d 644, 645 (Alaska 1972). The statute in *Marks* prohibited any "offensively coarse utterance, gesture, or display"; *Marks* v. *Anchorage,* supra; while § 53a-182 (a) (2) prohibits "offensive or disorderly conduct."

[was] susceptible of regular application to protected expression." Id., 467. The court distinguished *Colten* by noting that the *Houston* ordinance was "not narrowly tailored to prohibit only disorderly conduct or fighting words, and in no way resembles the law upheld in *Colten*." Id., 465. If we are to apply a resemblance test, the vague subdivisions of § 53a-182 (a) are much closer to the *Houston* ordinance than to the *Colten* prohibition of disobeying police officers. In addition, § 53a-182 is hardly "narrowly tailored." As the defendant's brief points out, it is one of the few disorderly statutes in the country that forbids "disorderly conduct," an inherently circular and vague prohibition. It seems fair to assume that *Colten* is a valid precedent. The manner in which it is distinguished in *Houston* v. *Hill*, supra, 465–66, however, is strong evidence that *Colten* is a limited holding, rather than broad authority that disorderly conduct statutes are to be afforded a limited vagueness standard of review.

There is another matter more fundamental that the majority fails to acknowledge. As I previously pointed out, the United States Supreme Court has characterized the arbitrary enforcement concern—that is, " 'the requirement that a legislature establish minimal guidelines to govern law enforcement' "; *Kolender* v. *Lawson*, supra, 358;—as the most important aspect of the vagueness doctrine. Id.; see *Smith* v. *Goguen*, 415 U.S. 566, 574, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974). The discretion on the part of prosecutors, judges and juries to interfere with speech that the vagueness doctrine attempts to control is implicated in an unusual and disturbing manner as follows: The predicate clause and the first three subdivisions of § 53a-182 (a) are mirrored by General Statutes § 53a-181a, creating a public disturbance. To emphasize my point, I set forth the relevant language of the two statutes:

Section 53a-181a provides in part: "(a) A person is guilty of *creating a public disturbance* when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he (1) engages in fighting or in violent, tumultuous or threatening behavior; or (2) annoys or interferes with another person by offensive conduct; or (3) makes unreasonable noise." (Emphasis added.)

Section 53a-182 provides in part: "(a) A person is guilty of *disorderly conduct,* when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise . . . ." (Emphasis added.)

The language of the statutes is nearly identical. For constitutional purposes, however, there is a crucial difference between these two enactments. A conviction under § 53a-182, a misdemeanor offense, creates a criminal record; whereas a conviction under § 53a-181a, a mere infraction, does not result in a criminal record. General Statutes § 53a-181a (b). As a result of this distinction, a conviction under § 53a-182 can result in the loss of liberty with a maximum sentence of three months,[6] and a maximum fine of $500;[7] the most severe

---

[6] General Statutes § 53a-36 provides: "A sentence of imprisonment for a misdemeanor shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a class A misdemeanor, a term not to exceed one year except that when a person is found guilty under section 53a-61 (a) (3) or 53a-61a, the term shall be one year and such sentence shall not be suspended or reduced; (2) for a class B misdemeanor, a term not to exceed six months; (3) for a class C misdemeanor, a term not to exceed three months; (4) for an unclassified misdemeanor, a term in accordance with the sentence specified in the section of the general statutes that defines the crime."

[7] General Statutes § 53a-42 provides: "A fine for the conviction of a misdemeanor shall be fixed by the court as follows: (1) For a class A misdemeanor, an amount not to exceed two thousand dollars; (2) for a class B misdemeanor, an amount not to exceed one thousand dollars; (3) for a class C misdemeanor, an amount not to exceed five hundred dollars; (4) for an unclassified misdemeanor, an amount in accordance with the fine specified in the section of the general statutes that defines the crime."

sentence authorized under § 53a-181a is a fine of $100.[8]
It is difficult to conceive of a manner in which abso-
lute discretion can better be vested in law enforcement
personnel than to have two statutes on the books that
provide not merely *different* punishments for proof of
an identical set of elements, but drastically different
punishments: a small fine versus the potential for a loss
of liberty and the stigma of a criminal record.

Finally, the terms incorporated in § 53a-182 are so
imprecise and subject to such a variety of interpreta-
tions that "construing the statute to apply only to 'core
criminal conduct' . . . would be tantamount to . . .
'rewrit[ing the] statute.' " *Dorman* v. *Satti,* 862 F.2d
432, 436 (2d Cir. 1988), cert. denied, 490 U.S. 1099,
109 S. Ct. 2450, 104 L. Ed. 2d 1005 (1989).[9] In an
attempt to save the statute, the majority "perform[s]

---

[8] General Statutes § 54-195 provides: "Any person who is convicted of
a violation of the general statutes for which violation no penalty is expressly
provided shall be fined not more than one hundred dollars."

[9] The majority holds that prior judicial decisions have, through judicial
gloss, clarified any ambiguity in the language of General Statutes
§ 53a-182 (a) (1) so as to put persons on notice of the type of conduct pro-
hibited by the statute. They rely in part on *State* v. *Lo Sacco,* 12 Conn. App.
481, 531 A.2d 184, cert. denied, 205 Conn. 814, 533 A.2d 568 (1987). This
reliance is misplaced, however, because *Lo Sacco* construed General Stat-
utes § 53a-181a, and not § 53a-182.

The majority also relies on *State* v. *Duhan,* 38 Conn. Sup. 665, 668, 460
A.2d 496 (App. Sess. 1982), rev'd on other grounds, 194 Conn. 347, 481
A.2d 48 (1984). *Duhan* was decided by the Appellate Session of the Supe-
rior Court. Although I recognize that the United States Supreme Court
has held that judicial gloss can be authoritatively placed on a statute by
an appellate court of state-wide jurisdiction, so as to place persons on notice
of the type of conduct prohibited by the statute; *Gooding* v. *Wilson,* 405
U.S. 518, 524–27, 525 n.3, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1972); I do
not believe that the mere pronouncements of an appellate division of the
trial court constitute sufficient notice to resolve unconstitutionally vague
statutory language. The placing of judicial gloss on a statute to enable it
to pass constitutional muster, as compared to the mere interpretation of
a statute, always marks a fine line between the legislative and the judicial
functions. The drawing of this fine line, when constitutionally permissible,
is best left to this court or the Appellate Court as now constituted.

a remarkable job of plastic surgery upon the face" of § 53a-182. *Shuttlesworth* v. *Birmingham,* 394 U.S. 147, 153, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969). Nevertheless, under our state constitution, the task of legislating is committed to the legislature, not to this court. Conn. Const., art. II. "Clearly, this court lacks the authority to reshape public policy by construing a statute in a manner that alters its inherent meaning."[10] *State* v. *Proto,* 203 Conn. 682, 698, 526 A.2d 1297 (1987).

Simply put, what the majority does here is to make a new law and not enforce that which was enacted by the legislature. In *State* v. *Schriver,* supra, 456, we were confronted with a void for vagueness challenge to General Statutes § 53-21 ("Injury or risk of injury to, or impairing morals of, children"). The defendant was convicted of impairing the *mental* health of a child under a provision of § 53-21 that proscribed injuring the health of a minor. Id., 461. Although we recognized that "[u]nder an appropriately tailored penal law, the legislature would have the power to proscribe" the impairment of the mental health of a child; id., 467; and such injury was arguably encompassed in the vague language of the statute, we declined to perform the extensive surgery necessary to save such an ambiguous and standardless statute. We held the following: "Without the aid of prior decisions to lend an authoritative gloss to the potentially limitless language of the statute, any

---

[10] This limitation has been recognized by the United States Supreme Court when it has determined whether to put judicial gloss on a federal statute in order to save it. See, e.g., *United States* v. *Reese,* 92 U.S. 214, 221, 23 L. Ed. 563 (1875) (for the court to "introduce words of limitation" into overbroad criminal statute in order to make it constitutional "would, to some extent, substitute the judicial for the legislative department . . . . To limit this statute . . . would be to make a new law, not to enforce an old one. This is no part of our duty."); *Scales* v. *United States,* 367 U.S. 203, 211, 81 S. Ct. 1469, 6 L. Ed. 2d 782 (1961); see L. Tribe, American Constitutional Law (2d Ed. 1988) § 12-30.

effort to conform § 53-21 to the mandate of due process would necessarily entail a wholesale redrafting of the statute. We decline to undertake this activity, which is within the exclusive province of the legislature. *State v. O'Neill,* 200 Conn. 268, 288, 511 A.2d 321 (1986); *State v. Johns,* 184 Conn. 369, 376-77, 439 A.2d 1049 (1981); see also *Harris v. State,* 457 P.2d 638, 647 (Alaska 1969) (refusing to resurrect by judicial fiat a standardless statute prohibiting 'crime[s] against nature'); *ABC Interstate Theaters, Inc. v. State,* 325 So. 2d 123, 126 (Miss. 1976) (declining to exercise the 'legislative function' of revising an unconstitutionally vague obscenity statute)." *State v. Schriver,* supra, 468.[11] In the present case, this court should be all the more reluctant to undertake wholesale redrafting of § 53a-182 when there exist two statutes that reach the same conduct and the same first amendment activities—one a misdemeanor and the other, § 53a-181a, an infraction.

In sum, it is crystal clear that criminal statutes "may be held facially invalid *even if they also have legitimate application.*" (Emphasis added.) *Houston v. Hill,* supra, 459. "Even if the legislative purpose is a legitimate one of substantial governmental interest, 'that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.'" 4 R. Rotunda & J. Nowak, Treatise on Constitutional Law (2d Ed. 1992) § 20.10, p. 39, quoting *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S. Ct. 247, 5 L. Ed. 2d 231 (1960). I am "mindful that the preservation of liberty depends in part upon the maintenance of social order. . . . But the First Amendment recognizes, wisely . . . that a certain amount

---

[11] There are also practical considerations that counsel against the copious application of judicial gloss by the majority in this case. The court has extensively revamped a statute without the benefit of the legislative process or even the advocacy of the parties. The legislative process would enable representatives of law enforcement, prosecutorial and defense interests to give their input into the rewriting of this legislation.

of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive." (Citation omitted.) *Houston* v. *Hill,* supra, 472.

I fully agree that there is a place and a need for a disorderly conduct statute, but that statute must be narrowly drafted so as not to punish and deter constitutionally protected conduct, and must have sufficient specificity so that it provides to a person of ordinary intelligence fair notice of what is prohibited and avoids undue prosecutorial discretion. That drafting, however, must be left to the legislature. I suspect that this state could survive without a disorderly conduct statute for the few months it would take for the legislature to redraft and adopt an acceptable statute that can pass constitutional muster.

I would hold that § 53a-182 is unconstitutional. Accordingly, I respectfully dissent.