STATE OF CONNECTICUT *v.* LIAM MCKIERNAN
(AC 22223)

Foti, Dranginis and Bishop, Js.

Argued May 8—officially released July 22, 2003

*Richard W. Callahan,* special public defender, for the appellant (defendant).

*Denise B. Smoker,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, *James R. Turcotte,* supervisory assistant state's attorney, and *Proloy K. Das,* former special deputy assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Liam McKiernan, appeals from the judgment of conviction, rendered after a jury trial, of disorderly conduct in violation of General Statutes § 53a-182 (a) (1).[1] On appeal, the defendant claims that (1) the trial court improperly instructed the jury, (2) his conviction is not supported by sufficient evidence and (3) prosecutorial misconduct deprived him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the evening hours of October 30, 1999, the defendant and the victim, his wife, along with several of their friends, attended a Halloween party at a restaurant

---

[1] General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior . . . ."

The jury acquitted the defendant of two additional charges: reckless endangerment in the second degree in violation of General Statutes § 53a-64 (a) and unlawful restraint in the second degree in violation of General Statutes § 53a-96. Following his conviction, the defendant pleaded guilty to a part B information charging him with having committed an offense while on release in violation of General Statutes § 53a-40b.

in New Haven. Alcoholic beverages were served at the gathering and, by the time that the restaurant closed in the early morning hours of October 31, 1999, the defendant was intoxicated. At around 1:45 a.m., the victim drove the defendant to a friend's home in nearby East Haven, where they continued to socialize with friends.

Shortly thereafter, the defendant and the victim began to argue with one another. The defendant expressed his desire to leave the party, and the victim, believing that the defendant was too intoxicated to drive, refused to give him the keys to her automobile. The defendant struck the victim, causing her to fall to the floor. The victim thereafter left her friends' home in East Haven and, assuming that the defendant would get a ride home from someone else, drove alone to her home in North Haven.

The victim was in her home when, at around 2:30 a.m., she heard the sound of breaking glass. The defendant had broken a small pane of glass in a side window to gain entry to the home. The victim started to run to her car in the garage, but the defendant, who had entered the home, stopped her. The defendant grabbed her by her hair and dragged her back into the house. In the ensuing struggle, the defendant struck the victim several times and, continually pulling her by her hair, pulled her to the second floor of the house.

The victim ultimately fled back downstairs where she called the police for assistance. Two North Haven police officers arrived at the home shortly thereafter. The officers found the victim, visibly upset, in the kitchen, where she gave the police a written statement concerning those events. The defendant was subsequently arrested, brought to trial and convicted of disorderly conduct. This appeal followed. Additional facts will be

set forth as they become necessary in the context of the claims raised by the defendant on appeal.

I

The defendant first claims that the court improperly instructed the jury on the conduct proscribed by § 53a-182 (a) (1), the use of prior inconsistent oral statements and the standard of proof it should employ in evaluating the victim's credibility. We disagree.

"Our analysis begins with a well established standard of review. When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 484–85, 668 A.2d 682 (1995).

A

In regard to the elements of disorderly conduct, the court instructed the jury in relevant part as follows: "In this case, in order to convict the defendant of disorderly conduct, the state must establish that he, with the 'intent to cause inconvenience, annoyance or alarm or recklessly creating a risk thereof,' engaged in 'fighting or in violent, tumultuous or threatening behavior.' The words inconvenience, annoyance or alarm refer to what a reasonable person operating under contemporary community standards would consider to be a disturbance to

or impediment of a lawful activity. A deep feeling of vexation or provocation or a feeling of anxiety prompted by threatened danger or harm."

The defendant in his principal brief argues that the court should have instructed the jury that to find him guilty under § 53a-182 (a) (1), "the defendant had to engage in a physical fight or in physically violent, threatening or tumultuous behavior . . . ." The defendant claims that by omitting from its instruction the phrase "of a physical nature," a phrase that he, in his requested jury instructions, had asked the court to use in its definition of the conduct proscribed by the statute, the court misled the jury.[2] The defendant claims that by "not limiting the jury to physical conduct or conduct that had a degree of physicality to it, [the court's instruction allowed] the jury as a collective body and/or each individual juror . . . to apply its own subjective definition of 'tumultuous' and 'threatening' to the case such that it is reasonably possible that the defendant was convicted of conduct not proscribed by § 53a-182 (a) (1)." The defendant bases his claim on *State* v. *Indrisano*, 228 Conn. 795, 812, 640 A.2d 986 (1994), in which our

[2] The defendant's requested charge, which preserved the issue for our review, stated in relevant part: "For you to find the defendant guilty of [disorderly conduct], the state must first prove beyond a reasonable doubt each of the following facts: (1) That the defendant acted with intent to cause inconvenience, annoyance or alarm; or (2) That the defendant recklessly created the risk of causing inconvenience, or annoyance or alarm; and, (3) That the defendant engaged in fighting or in violent, tumultuous or threatening behavior of a physical nature.

"The words 'inconvenience, annoyance or alarm' refer to what a reasonable person operating under contemporary community standards would consider to be a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm.

"If the state has proved to you beyond a reasonable doubt that the defendant acted with the necessary intent or recklessly, then the state must prove beyond a reasonable doubt the next element of the crime charged, that the defendant engaged in fighting or in violent, tumultuous or threatening behavior of a physical nature."

Supreme Court stated that "subdivision (1) of § 53a-182 (a) prohibits physical fighting, and physically violent, threatening or tumultuous behavior."

The due process vagueness doctrine ordinarily applies to the substantive elements of the crime charged; *State* v. *Cobb*, 251 Conn. 285, 439, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000); the statutory language, taken together with its judicial gloss, must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. *State* v. *Indrisano*, supra, 228 Conn. 802. The substantive elements must be defined with reasonable clarity not only so that a defendant may guide his conduct accordingly, but also for police, judges and juries "so that they may not apply the law arbitrarily." *State* v. *Cobb*, supra, 439.

We do not agree that *Indrisano* stands for the proposition that the phrase "of a physical nature" *must* be included to modify the conduct proscribed by § 53a-182 (a) (1). The court's instruction comported with the judicial gloss prescribed in *Indrisano*. *Indrisano* avoided first amendment difficulties that would criminalize mere verbal speech by clarifying that a conviction under § 53a-182 must be based on a defendant's conduct rather than on a defendant's statements.

Further, there is no danger, in the present case, that the jury's verdict was not based solely on evidence of the defendant's physical conduct. The jury was not made aware of the content of the defendant's speech, but rather was presented with evidence only of his conduct, making it more than unlikely that his first amendment rights were "criminalized" by the court's instruction.[3]

---

[3] We find no merit in the defendant's claim that because the jury acquitted him of the charge of reckless endangerment in the second degree, it could not rationally have convicted him of disorderly conduct on the basis of his physical conduct, that is, one or more of the four physical acts of violence described by the victim in her statement to the police.

## B

The defendant also alleges that the court improperly instructed the jury on the use of the victim's prior inconsistent oral statements. He argues that the court erred in not charging as he requested, specifically, in not limiting the jury's use of prior oral statements solely for purposes of judging credibility. Because of such claimed impropriety, the defendant posits that "the jury was misled by the trial court's instruction and considered the wife's prior inconsistent oral statements as substantive evidence of the essential elements of the crimes charged."

It appears that the defendant does not claim that the court improperly admitted into evidence, for substantive purposes, any prior written inconsistent statements. See *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 474 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). Our review of the record discloses that references made by the defendant on appeal relate either to items that were never introduced as evidence and therefore never presented to the jury, or, to a document, the family violence victim advocate's case report, which was admitted as a full exhibit for substantive purposes, without an apparent objection, as a business record pursuant to the business records exception to the hearsay rule. The defendant's brief cites no specific prior inconsistent oral statement by the victim for which the court should have given the requested limiting instruction.

## C

The defendant last claims that the court improperly instructed the jury in regard to the standard of proof, insofar as it related to evaluating the victim's credibility. The defendant argues that because the victim's truthfulness was essential to a finding of guilt, the court should have instructed the jury that it had to find that she was

truthful beyond a reasonable doubt to find that the state had proven the elements of the crime.

The defendant requested the court instruct as follows: "In some regards deciding when someone is being truthful and when someone is not is the greatest challenge for a jury. In this case it is no different. Indeed, in order to find the factual elements of the crimes charged beyond a reasonable doubt, because there is no evidence of the factual elements of the crimes apart from [the victim's] written statement of October 31, 1999, individually, each juror must decide whether you can believe beyond a reasonable doubt [that the victim] was being truthful in her statement on the evening of October 31, 1999."

The court delivered the following instructions to the jury: "The evidence from which you are to decide what the facts are consist of, first, the sworn testimony of witnesses, both on direct and cross-examination, regardless of who called a particular witness. And second, the exhibits that have been received into evidence. . . . In deciding what the facts are, you must consider all the evidence. In doing this you must decide which testimony to believe and which testimony not to believe. You may believe all, none or part of any witness' testimony. . . .

"You will recall that evidence of statements of [the victim] were admitted. You should consider the facts contained in those statements together with all of the evidence and you should give those facts the weight they appear to be entitled to in view of all of the circumstances under which they were made. The believability of the facts contained within her statements are subject to the same credibility test as any other testimony given on the [witness] stand. . . .

"The burden to prove the defendant guilty of the crimes with which he is charged is upon the state. The

defendant does not have to prove his innocence. This means that the state must prove beyond a reasonable doubt each and every element necessary to constitute the crime charged. Whether the burden of proof resting on the state is sustained depends not on the number of witnesses, nor on the quantity of the testimony, but on the nature and quality of the testimony. Please bear in mind that one witness' testimony is sufficient to convict if it establishes all of the elements of the crime beyond a reasonable doubt. . . .

"If you find that the state has proven, beyond a reasonable doubt, each of the elements of any of the crimes . . . then you shall find the defendant guilty of each crime as to which you have made such a finding. On the other hand, if you find that the state has failed to prove, beyond a reasonable doubt, any one of the elements of those crimes, then you shall find the defendant not guilty of each such crime."

Our review of the charge as a whole leads us to conclude that the instructions were correct in law, adapted to the issues, and sufficient to guide the jury as to how it should assess the victim's credibility and determine whether the state had proven its case beyond a reasonable doubt.

## II

The defendant claims that the evidence presented at trial was insufficient to sustain his conviction of disorderly conduct. We disagree.

"[W]e have consistently employed a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction. . . . First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have con-

cluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . That the evidence is circumstantial rather than direct does not diminish the probative force of that evidence. . . . We must be mindful, however, that [a]lthough the jury may draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture. . . . Each essential element of the crime must be proved beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Caprilozzi,* 45 Conn. App. 455, 463–64, 696 A.2d 380, cert. denied, 243 Conn. 937, 702 A.2d 644 (1997).

The record reflects that the court admitted into evidence the victim's written statement to the police. The statement was signed by the victim and dated October 31, 1999, at 2:56 a.m. The victim represented in that statement that the defendant had struck and pushed her down several times while she and the defendant were at their friends' East Haven home. She further represented that when he arrived at her home later that night, the defendant struck her several times, pulled her hair and dragged her up the stairs of her home by her hair. The record further reflects that the court admitted the statement into evidence under *State* v. *Whelan,* supra, 200 Conn. 753, which permits certain prior inconsistent statements, which are in writing, to be admitted into evidence for substantive purposes. At trial, the victim did not testify consistently with the version of events that she provided to police in her statement. The victim testified, contrary to that version of events, that she falsely had accused her husband of physical violence toward her as an act of revenge. The court instructed the jury that it could consider the written statement for substantive purposes. The defendant did not object to the statement's admission into evidence and does not now claim that the statement does not satisfy *Whelan*'s criteria.

Under *Whelan,* a nonparty witness' prior inconsistent statement may be used for substantive purposes only if the following conditions exist: (1) the statement is in writing; (2) the statement is signed by the declarant; (3) the declarant possesses personal knowledge of the facts contained therein; and (4) the declarant testifies at trial and is subject to cross-examination. Id.; Conn. Code Evid. § 8-5 (1). Despite those requirements, there are rare cases in which a statement, which otherwise satisfies *Whelan*'s criteria, should be excluded from evidence because it was made under circumstances that adversely affect its reliability. In such cases, it is proper for the court to act as a gatekeeper and to exclude from evidence such statements because their admission would "subvert the fairness of the fact-finding process." (Internal quotation marks omitted.) *State v. Watkins,* 72 Conn. App. 804, 813, 806 A.2d 1072 (2002), cert. denied, 263 Conn. 923, 823 A.2d 1216 (2003).

The defendant posits that such a situation exists in the present case and that "this court should find that the [victim's] *Whelan* statement by itself, when reviewed upon the totality of the evidence, was unreliable and thus insufficient to sustain a conviction." The defendant curiously argues on appeal not that the court improperly admitted the statement under *Whelan,*[4] but that the jury could not have credited the statement in reaching its verdict because it was not reliable. His claim is that the statement is not sufficient to sustain his conviction and, in that regard, is one sounding in sufficiency of the evidence.

A prior inconsistent statement identifying the defendant as the perpetrator and admitted as substantive evidence is sufficient to establish guilt beyond a reason-

[4] In any event, we note that having failed to object to the statement's admissibility at trial, the defendant failed to preserve such an evidentiary claim.

able doubt where the statement possesses ample indicia of reliability. See *State* v. *Newsome*, 238 Conn. 588, 617–20, 682 A.2d 972 (1996). Contrary to the defendant's claim on appeal, there is nothing to indicate that the statement was not that of the victim. This was not the rare case in which, despite having satisfied *Whelan*'s requirements, circumstances warranted the exclusion of the prior statement from evidence.[5] It was in writing, sworn to and given shortly after the event happened. The jury, as the finder of fact, was able to assess the factual issues, which were raised by the defendant at trial, that called into doubt the statement's merit. In meeting the *Whelan* criteria, the statement necessarily met the required indicia of reliability. If the jury, having heard evidence concerning the victim's prior written statement and having heard her trial testimony concerning the events underlying this appeal, chose to credit her written statement, such a finding alone would be sufficient to support the defendant's conviction. See *State* v. *Watkins*, supra, 72 Conn. App. 815. The jury is the finder of facts, and credibility issues are strictly within its province.

Our review of the record before us indicates that the evidence supports the jury's verdict and was sufficient to sustain the defendant's conviction of disorderly conduct.[6]

[5] The defendant argues in his principal brief that the statement was unreliable because (1) no evidence corroborated the victim's statement, (2) the statement "itself further supports" the victim's trial testimony that the statement was fabricated, (3) the victim testified that she was intoxicated when she gave the statement to police and (4) the victim's explanation of why she falsely accused the defendant is credible. All of those factors are fodder for the jury's consideration as to whether it should rely on the statement, but they certainly do not raise issues that call into doubt whether the statement, having met *Whelan*'s criteria, was admissible for substantive purposes.

[6] The defendant also argues that the jury, having acquitted him of the crime of reckless endangerment in the second degree, must have disbelieved the victim's original statement. It follows, the defendant argues, that having so found, the jury could not also have found that he acted in the manner

## III

The defendant's final claim is that he was denied a fair trial because the prosecutor "engaged in an egregious pattern of misconduct, recklessly disregarding the defendant's constitutional due process rights and his right to confront witnesses against him." In support of his claim, the defendant cites several instances of alleged misconduct.

The defendant concedes that he did not raise his claim at trial. He seeks review of his claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We review the claim because the record is adequate to do so, and an allegation of prosecutorial misconduct in violation of the defendant's fundamental right to a fair trial is of constitutional magnitude. *State* v. *Whipper*, 258 Conn. 229, 272, 780 A.2d 53 (2001). We conclude, however, that the defendant's claim fails under *Golding*'s third prong because the defendant has failed to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial.

Claims of prosecutorial misconduct trigger a two-pronged inquiry. First, we must examine the allegedly improper conduct to determine if it was, in fact, improper and rose to the level of prosecutorial misconduct. If it did, we will analyze the effect of the misconduct to determine if it deprived the defendant of a fair trial. See *State* v. *L'Minggio*, 71 Conn. App. 656, 677–78, 803 A.2d 408, cert. denied, 262 Conn. 902, 810 A.2d 270 (2002). Generally, "[i]n evaluating a prosecutorial misconduct claim, we review whether the record discloses a pattern of misconduct pervasive throughout

described in the statement for purposes of the disorderly conduct count. We find no merit in that argument. It suffices to observe that those two crimes are proved by different elements; the jury's verdict is not legally inconsistent. The fact that the jury acquitted the defendant of reckless endangerment in the second degree has no bearing on the issue of whether sufficient evidence supported his conviction of disorderly conduct.

the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial." *State* v. *Wickes*, 72 Conn. App. 380, 385, 805 A.2d 142, cert. denied, 262 Conn. 914, 811 A.2d 1294 (2002).

Several of the defendant's claims concern allegedly improper argument by the prosecutor. "In determining whether the defendant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial. . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 267, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). Mindful of those principles, we now turn to each of the defendant's specific claims of misconduct.

A

The defendant alleges that the prosecutor, knowing that it would cause the discharge of the public defender representing the defendant, represented to the court that the defendant was not exposed to jail time as a

result of the charges. The prosecutor made the representation prior to the time of trial. Our review of the record reveals that at the time the prosecutor made that representation, it was correct.[7] That being the case, the claim of misconduct is unfounded. Further, the record clearly discloses that it was the office of the public defender that discovered the defendant to be ineligible for its services and filed a motion to withdraw from its representation of him. The court granted the motion and thereafter denied the defendant's reapplication. It was at that time that the court observed and the state represented that the defendant was not facing incarceration. If the defendant wants to claim that the prosecutor, knowing at the time of his representation that a part B information was going to be filed later, "misrepresented" or was unethical in the representation, there exists another forum for that complaint.

B

The defendant further claims that the state's filing of the part B information constituted "capricious charging practices." The defendant can cite no authority in support of his claim. The record reflects that the part B information was filed prior to the commencement of the trial, a practice permitted by Practice Book § 36-17. We conclude that the filing therefore was not improper.

C

The defendant also claims that the prosecutor should have furnished notice of the state's application to grant immunity from prosecution to the victim sooner than it did, which was on March 8, 2001, after the trial had begun. He argues that had he known sooner of the application, he likely would have known that the part B information exposed him to incarceration and would

[7] The defendant was not exposed to incarceration until the state filed the part B information, charging him with having committed an offense while on release.

have applied for the services of a public defender. Despite making that claim, the defendant does not dispute the fact that counsel represented him at all times during the trial and immediately prior to jury selection. The defendant also does not dispute that the state is under no obligation to furnish notice to him of its application in the first place. See General Statutes § 54-47a (requiring state to make application "with notice to the witness, after the witness has claimed his privilege against self-incrimination"). It was only after the witness had invoked her privilege against self-incrimination that the state submitted its application and notified both the witness and the defendant of such fact. The state did so despite the fact that the defendant was not entitled to notice as a matter of right. Accordingly, the prosecutor's conduct in that regard was not improper.

D

The defendant next claims that the state, during its remarks to panels of prospective jurors, improperly informed the jurors that the chiefs of police for different towns might either be called as witnesses or that the jury might hear their names as part of the evidence. The defendant claims that those witnesses "clearly had no evidence to present in the case" and that those remarks deprived him of a fair trial. The record reflects that two chiefs of police, from the towns of Norwich and Ansonia, were included in the state's potential witness list. Despite the fact that the state did not later call those witnesses to testify at trial, the defendant can cite no authority in support of his obscure claim that it is improper to name potential witnesses who are not later called to testify. Furthermore, the defendant cannot demonstrate that the state's conduct, which was not improper, caused him any degree of prejudice.[8]

[8] Although we do not find the state's conduct to have been in any way improper, we note that the court nevertheless instructed the jury that the state had named the listed potential witnesses merely to determine whether any prospective jurors were familiar with such witnesses. The court also

## E

The defendant also points out that with regard to one item of evidence, the prosecutor failed to comply with the rules of discovery. The record reflects that the state did not present to the defendant a copy of a certain document, a data sheet concerning the incident generated by the family relations office, within forty-five days of the defendant's written request for discovery. The state provided the document to the defendant after it should have done so, and the defendant sought an appropriate remedy from the court for what he characterized as an unintentional violation on the state's part. The court determined that the late disclosure violated Practice Book § 40-5.[9]

The court observed that it would remedy the discovery violation either by disallowing the document as evidence or by granting the defendant additional time to prepare for the introduction of the document. The court chose the latter alternative and allowed defense counsel additional time to conduct research and to interview the document's author. The defendant's coun-

---

instructed the jury: "You are not to draw any unfavorable inference for or against either party from the fact that any potential witness did not actually testify."

[9] Practice Book § 40-5 provides: "If a party fails to comply with the disclosure as required under these rules, the opposing party may move the judicial authority for an appropriate order. The judicial authority hearing such a motion may enter such orders and time limitations as it deems appropriate, including, without limitation, one or more of the following:

"(1) Requiring the noncomplying party to comply;

"(2) Granting the moving party additional time or a continuance;

"(3) Relieving the moving party from making a disclosure required by these rules;

"(4) Prohibiting the noncomplying party from introducing specified evidence;

"(5) Declaring a mistrial;

"(6) Dismissing the charges;

"(7) Imposing appropriate sanctions on the counsel or party, or both, responsible for the noncompliance; or

"(8) Entering such other order as it deems proper."

sel, however, later withdrew the motion that he had filed pursuant to Practice Book § 40-5. The defendant's counsel represented that he had interviewed the document's author and conceded that the defense was not prejudiced by the delay in receiving the report. The defendant is wholly unable to demonstrate that the state's conduct caused him any prejudice.[10]

## F

The defendant finally claims that the prosecutor committed misconduct by way of certain statements that he made to the jury during trial.

First, the defendant points out that during direct examination of the victim, the prosecutor inquired as to whether she had asked the state to "drop" the charges against the defendant. After the victim replied that the state had in fact declined her request, the prosecutor asked her: "And we told you that's because we believed [that the incident] occurred, isn't that correct?" The victim replied affirmatively. The defendant claims on appeal that this inquiry improperly conveyed to the jury "that the state believed the defendant assaulted his wife . . . ."

---

[10] Further, the defendant does not claim on appeal that the court in any way abused its discretion concerning the violation of Practice Book § 40-5. "Practice Book § 40-5 gives broad discretion to the trial judge to fashion an appropriate remedy for noncompliance with discovery. . . . Generally, [t]he primary purpose of a sanction for violation of a discovery order is to ensure that the defendant's rights are protected, not to exact punishment on the state for its allegedly improper conduct. As we have indicated, the formulation of an appropriate sanction is a matter within the sound discretion of the trial court. . . . In determining what sanction is appropriate for failure to comply with court ordered discovery, the trial court should consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances. . . . Suppression of relevant, material and otherwise admissible evidence is a severe sanction which should not be invoked lightly." (Citations omitted; internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 186, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

Second, the defendant claims that during the state's closing argument, the prosecutor misrepresented the evidence. The record discloses that the prosecutor commented that the victim had told a family relations social worker that during the incident, "she ran to get into her car," "was grabbed by the hair" and "was dragged upstairs" by the defendant. Further, the defendant claims that during closing argument, the prosecutor stated that the victim had told the social worker, concerning the defendant: "You know, he beat me before, he beat me this time . . . ." The defendant argues that the social worker testified at trial that she had no recollection of her conversation with the victim and that her handwritten notes of her interview of the victim did not support the prosecutor's summary of what the victim had told the social worker.

Our review of the record reveals that the first challenged comment came in the form of a question to the victim, which included an explanation of why the state chose not to comply with the victim's request to drop the charges against the defendant. We do not view it as improper. As to the comments made by the prosecutor during closing argument concerning what the victim had recounted to the social worker, we conclude that although they are arguably a loose interpretation of the version of events, the facts alluded to therein were not outside of the evidence presented.

It is well settled that a prosecutor must not comment on evidence that is not part of the record, nor is he to comment unfairly on the evidence adduced at trial so as to mislead the jury. Here, the facts alluded to by the prosecutor were set forth in the victim's statement to the police, which was before the jury. We certainly do not condone paraphrasing or embellishing on a witness' testimony, but we also recognize that the parties are allowed a certain degree of latitude to express their views of what evidence was presented at trial. To the

extent that those *isolated* misstatements, which were not severe, may have misled the jury, we nonetheless conclude that they certainly did not deprive the defendant of a fair trial. The jury was well aware that the prosecutor's comments were not themselves evidence. The court properly instructed the jury that its recollection and interpretation of the evidence was controlling, and the prosecutor properly referred to that fact, as well, in his argument to the jury.

The judgment is affirmed.

In this opinion the other judges concurred.