******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* WILLIAM
ANDRIULAITIS
(AC 38367)

Lavine, Keller and Flynn, Js.

*Argued September 14—officially released November 8, 2016*

(Appeal from Superior Court, judicial district of New Britain, geographical area number fifteen, Schuman, J.)

*Rose Longo-McLean*, with whom, on the brief, was *John R. Williams*, for the appellant (defendant).

*Lisa Riggione*, senior assistant state's attorney, with whom were *Judith Dicine*, supervisory assistant state's attorney, and, on the brief, *Brett R. Aiello*, special deputy assistant state's attorney, and *Brian Preleski*, state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. In *State* v. *Indrisano*, 228 Conn. 795, 640 A.2d 986 (1994), our Supreme Court applied an interpretive gloss to certain provisions of the disorderly conduct statute, General Statutes § 53a-182,[1] in order to preserve their constitutionality. At issue in this appeal is the gloss providing that the phrase "offensive or disorderly conduct" in § 53a-182 (a) (2) means "conduct that is grossly offensive, under contemporary community standards, to a person who actually overhears it or sees it." Id., 818. The defendant, William Andriulaitis, appeals from the judgment of conviction, rendered after a trial to the court, of disorderly conduct in violation of § 53a-182 (a) (2). On appeal, the defendant claims that there was insufficient evidence to establish beyond a reasonable doubt that he engaged in conduct that was "offensive or disorderly" under the standard set forth in *Indrisano*, and that the court improperly failed to consider the *Indrisano* gloss in its deliberations because it did not reference the gloss when explaining the evidentiary and factual bases for its guilty verdict. The court, however, is presumed to have applied the proper legal standard in arriving at its legal conclusions, and the defendant has not identified any basis in the record to rebut that presumption. In any case, the defendant's argument that his conviction should be reversed simply because the court did not reference the *Indrisano* gloss when announcing its verdict misapprehends this court's standard of review for sufficiency of the evidence claims. Our review, by long-standing precedent, focuses on whether, in light of the entire evidentiary record together with all reasonable inferences that may be drawn therefrom, a rational fact finder could find that the state proved all of the necessary elements of the crime charged beyond a reasonable doubt. We conclude that the evidence adduced at trial meets this standard and, accordingly, affirm the defendant's conviction.

The record reveals the following facts and procedural history. The defendant lived at 61 Curtiss Road in Terryville with his wife, Tracy Andriulaitis, and their daughter, Kalie Andriulaitis. The defendant had physically abused Kalie on a consistent basis while she was growing up, and their relationship was strained. In the fall of 2012, Kalie moved some of her belongings out of 61 Curtiss Road in order to attend college at the University of Rhode Island. In early 2013, prior to the start of Kalie's second semester as a freshman, the defendant informed Kalie that her mother, who had been diagnosed with cancer approximately five years earlier, had slipped into a coma. Kalie returned from college and visited her mother in the hospital every day, and slept at 61 Curtiss Road every night, for about a week. On February 9, 2013, her mother died. The evening her mother died, the defendant physically assaulted Kalie and her grandfather in the hospital.

The following day, Kalie, fearing for her safety, obtained a police escort to accompany her to 61 Curtiss Road to collect her belongings. Officer Michael Smegielski of the Plymouth Police Department met Kalie, as well as a few of Kalie's friends and family members, at 61 Curtiss Road. At that time, the defendant was present inside the residence with his mother and Mary Wysocki, a woman with whom the defendant had a long-standing close, personal relationship. Officer Smegielski arrived with Kalie and knocked on the front door, at which point the defendant instructed his mother and Wysocki "to stay in [an upstairs bedroom] and lock the door." When no one answered the front door, Kalie, using a key she had obtained from inside a vehicle in the garage, partially opened a door to the residence that was inside the garage, but did not enter because she saw the defendant inside.

Officer Smegielski, whose testimony the court credited at trial, testified that he called out to the defendant, intending to speak with him prior to Kalie entering the residence in order to avoid a confrontation. Officer Smegielski further testified that the defendant appeared from a room in the hallway and approached the door. According to Officer Smegielski, he was "angry" and was "shouting profanities," including "F*** you. She doesn't live here. I don't want her here." Officer Smegielski further testified that, at that point, he instructed Kalie to close the door, not to enter the home, and to "reconvene [with him] outside the garage [to] figure out what's going on." As a result of the defendant's conduct, Kalie never entered into 61 Curtiss Road and never retrieved her belongings.

The defendant was charged in a substitute long form information with disorderly conduct in violation of § 53a-182[2] and two counts of criminal lockout in violation of General Statutes § 53a-214. Following a trial,[3] the court found the defendant guilty of disorderly conduct and not guilty on the two counts of criminal lockout. The court imposed a sentence of three months imprisonment, execution suspended, and one year of probation. The court explained its reasoning for finding the defendant guilty of disorderly conduct, in relevant part, as follows: "[A] key piece of evidence in my mind was the testimony of . . . Wysocki quoting the defendant as saying before Kalie came up to the house, the defendant said stay in the room and lock the door. This to me reveals that the defendant knew, intended and/ or planned a confrontation. From that point, the accounts of the incident varied from witness to witness, but I credit [Officer Smegielski's] version of the incident . . . ." The court found that "[b]ased on [Officer Smegielski's] testimony, primarily, what followed once Kalie came to the door was a tirade from the defendant, a tirade of profanities and untruths such as Kalie does not live here. All of this, including the defendant's com-

ments to . . . Wysocki, reveals the defendant's intent to cause inconvenience, annoyance or alarm in engaging in offensive or disorderly conduct." This appeal followed.

The defendant claims that "the court did not find— and the evidence would not support a finding—that the defendant's conduct was 'grossly offensive, under contemporary community standards, to a person who actually overhear[d] it or [saw] it,' " as required under *State* v. *Indrisano*, supra, 228 Conn. 818. While the defendant does not explain the precise nature of this claim, we interpret it, as the state does, as a challenge to the sufficiency of the evidence introduced at trial. We discern two primary arguments from the defendant's briefs. First, the defendant appears to argue that he is entitled to a reversal of his conviction because, in explaining its reasoning for finding him guilty of disorderly conduct, the court did not expressly find that his conduct was "offensive or disorderly" under the *Indrisano* standard, namely, that it was grossly offensive under contemporary community standards. Therefore, the defendant maintains, the court improperly failed to consider the *Indrisano* gloss in reaching its verdict. Second, the defendant argues that the evidence admitted at trial is insufficient to support a finding that his conduct was grossly offensive under contemporary community standards.[4] We disagree with both arguments.[5]

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the [finder of fact] if there is sufficient evidence to support the [finder of fact's] verdict." (Internal quotation marks omitted.) *State* v. *Mann*, 102 Conn. App. 345, 347, 925 A.2d 413, cert. denied, 284 Conn. 917, 931 A.2d 938 (2007).

We begin by reviewing the individual components of § 53a-182 (a) (2) as defined by the court in *Indrisano*. Section 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (2) by offensive or disorderly conduct, annoys or interferes with another person . . . ." The court in *Indrisano* held that § 53a-182 (a) (2) was unconstitutionally vague on its face; *State* v. *Indrisano*, supra, 228 Conn. 810; but applied an interpretive gloss to each individual component of the statute in order to preserve its constitutionality. Id., 818–19. First, with respect to the mens rea

language of § 53a-182 (a)—"with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof"—the court interpreted it to mean that the defendant's "*predominant* intent [must be] to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm." (Emphasis added.) *State* v. *Indrisano*, supra, 810. Second, as to the language in subdivision (2) of § 53a-182 (a)—"by offensive or disorderly conduct, annoys or interferes with another person"—the court held that "offensive or disorderly conduct" means "conduct that is grossly offensive, under contemporary community standards, to a person who actually overhears it or sees it." *State* v. *Indrisano*, supra, 818. Third, the court defined "annoys or interferes with another person" to mean "disturbs or impedes the lawful activity of another person." (Internal quotation marks omitted.) Id., 819. To summarize, therefore, a person is guilty of disorderly conduct under § 53a-182 (a) (2) "when, with the predominant intent previously defined or with a reckless disregard for the risks of his or her conduct, the person, by conduct that is grossly offensive under contemporary community standards to a person who actually overhears it or sees it, disturbs or impedes the lawful activity of another person." *State* v. *Scott*, 83 Conn. App. 724, 729, 851 A.2d 353 (2004).

At the outset, we reject the defendant's argument that his conviction should be reversed because the court, in articulating the factual and evidentiary bases in support of its guilty verdict, did not explicitly find that the defendant's conduct was grossly offensive under contemporary community standards.[6] First, this contention ignores the principle that, when reviewing a trial court's legal determinations, "we presume that the trial court . . . undertook the proper analysis of the law and the facts." (Internal quotation marks omitted.) *Elm City Cheese Co.* v. *Federico*, 251 Conn. 59, 72, 752 A.2d 1037 (1999); see also *State* v. *Brown*, 153 Conn. App. 507, 517 n.6, 101 A.3d 375 (2014) ("although the [trial] court did not explicitly discuss the basis of its [evidentiary] ruling . . . or its reasoning . . . we will not infer error from this silence because the court is presumed to know the law and apply it correctly to its legal determinations" [internal quotation marks omitted]), cert. granted on other grounds, 319 Conn. 901, 122 A.3d 636 (2015). In issuing its decision from the bench, the court found that after Kalie came to the door of 61 Curtiss Road, the defendant engaged in "a tirade of profanities and untruths such as Kalie does not live here. All of this . . . reveals the defendant's intent to cause inconvenience, annoyance or alarm *in engaging in offensive or disorderly conduct.*" (Emphasis added.) Thus, the court specifically found that the defendant's conduct was

"offensive or disorderly" within the meaning of § 53a-182 (a) (2), and we must presume that the court reached that conclusion by considering and properly applying the "grossly offensive under contemporary community standards" test set forth in *Indrisano*. See *State* v. *Cecil J.*, 291 Conn. 813, 829 n.12, 970 A.2d 710 (2009) (in absence of contrary evidence, "we must presume that the trial court applied the proper legal standard"). There is no evidence in the record to suggest that the court failed to consider *Indrisano*,[7] and we will not infer from the court's silence in that regard that its guilty verdict was not based on a proper application of *Indrisano* to the facts.

Moreover, in relying on the court's failure to reference the *Indrisano* gloss as a basis for a reversal of his conviction, the defendant misapprehends our standard of review for sufficiency of the evidence claims. In ruling on such claims, "the relevant question is whether, after viewing *the evidence* in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis added; internal quotation marks omitted.) *State* v. *Louis*, 163 Conn. App. 55, 63, 134 A.3d 648, cert. denied, 320 Conn. 929, 133 A.3d 461 (2016). Thus, our focus in reviewing the defendant's sufficiency of the evidence claim concerns whether, under the proper legal standards as set forth in *Indrisano*, the evidence introduced at trial was sufficient for a reasonable fact finder to conclude that the state proved beyond a reasonable doubt all of the necessary elements for a conviction for disorderly conduct under § 53a-182 (a) (2).

The defendant next argues that the evidence introduced at trial was insufficient to convict him of disorderly conduct. He specifically contends that the state adduced evidence merely that he refused to permit his adult daughter from entering her home to collect her belongings, and that he did so by utilizing a raised voice and a single curse word, which does not amount to conduct that is grossly offensive under contemporary community standards. We are not persuaded.

As previously noted, § 53a-182 (a) (2) proscribes "offensive or disorderly conduct" that annoys or interferes with another person. " '[O]ffensive or disorderly conduct' " is "conduct that is grossly offensive, under contemporary community standards, to a person who actually overhears it or sees it." *State* v. *Indrisano*, supra, 228 Conn. 818. This standard was adopted from obscenity law jurisprudence. See id. In the context of obscenity law, it is well recognized that the concept of "contemporary community standards" requires that the material in question "be judged by its impact on an average person, rather than a particularly susceptible or sensitive person—or indeed a totally insensitive one." *Miller* v. *California*, 413 U.S. 15, 33, 93 S. Ct. 2607, 37

L. Ed. 2d 419 (1973); see also *United States* v. *Various Articles of Obscene Merchandise, Schedule No. 2102*, 709 F.2d 132, 135 (2d Cir. 1983) ("contemporary community standards" means "in the judgment of the average person in the community, rather than the most prudish or the most tolerant" [internal quotation marks omitted]).

In determining whether the use of vulgar language is sufficiently offensive to give rise to the crime of disorderly conduct, "ordinarily, not only the words used, but also all of the surrounding circumstances, must be considered; and generally on a case-by-case basis. Among these surrounding circumstances are the manner of the occurrence, the repetition of the remarks, and the relationship of the persons involved." (Footnotes omitted.) 27 C.J.S. 444, Disorderly Conduct § 4 (2009). "Not all language that is vulgar, obscene, offensive, or insulting rises to the level of disorderly conduct. Conversely, the use of language that in certain situations would not constitute the offense, may in others be subject to prosecution." (Footnotes omitted.) Id., pp. 444–45. Whether particular conduct is grossly offensive under contemporary community standards is a question for the fact finder; the state need not present evidence that a witness to the conduct was grossly offended by it. See *State* v. *Scott*, supra, 83 Conn. App. 730.

In the present case, we conclude, after a careful review of the record, that the state introduced sufficient evidence to prove that the defendant engaged in conduct that was grossly offensive under contemporary community standards. The court heard evidence that, immediately before confronting Kalie and Officer Smegielski, the defendant instructed his mother and Wysocki to stay in an upstairs bedroom and lock the door, suggesting, as the court found, that the defendant intended or planned to enter into a confrontation. Officer Smegielski testified that when he and Kalie opened the door to 61 Curtiss Road, the defendant "came from the room" in a hallway, was "angry" and uncooperative, was "shouting profanities," and at one point shouted: "F*** you. She doesn't live here. I don't want her here." Given this testimony, the court reasonably could have inferred not only that the defendant used profane and vulgar language in his encounter with Kalie and Officer Smegielski, but also that he shouted a multitude of profanities at them and was untruthful about whether Kalie still lived there. The court also could have inferred from this evidence, as well as the evidence of the defendant's statements to his mother and Wysocki immediately before the incident, that the defendant was shouting the profanities in an angry and visibly threatening manner for the purpose of deterring Kalie from entering the residence to collect her personal belongings, an activity the defendant concedes Kalie had a lawful right to do. Indeed, the defendant's conduct prompted Officer Smegielski to instruct Kalie to remove herself from the

situation, rather than attempt to press the matter, further demonstrating that the defendant's demeanor was manifestly aggressive. The cumulative force of this evidence, viewed in the light most favorable to sustaining the conviction, provides a sufficient basis for a reasonable fact finder to conclude beyond a reasonable doubt that the defendant intended to, and did, impede Kalie's ability to engage in the admittedly lawful activity of retrieving her personal belongings, and that he accomplished this result through conduct that is grossly offensive under contemporary community standards.[8] See *State* v. *Indrisano*, supra, 228 Conn. 819. Accordingly, the state introduced sufficient evidence to sustain the defendant's conviction for disorderly conduct under § 53a-182 (a) (2).

Finally, we note that the fighting words limitation does not apply in this case because the defendant's conduct did not consist purely of speech. "Our Supreme Court has held that verbal statements, unaccompanied by physical violence, are considered 'violent tumultuous or threatening behavior' [for purposes of § 53a-182 (a) (1)] when they amount to 'fighting words that portend physical violence.' " *State* v. *Parnoff*, 160 Conn. App. 270, 276, 125 A.3d 573, cert. granted on other grounds, 320 Conn. 901, 127 A.3d 185 (2015). The requirement that the verbal statements portend some level of physical violence "is consistent with the fighting words limitation that must be applied when the conduct sought to be proscribed consists purely of speech. . . . The [limitation] permits the state to prohibit speech that has a direct tendency to inflict injury or to cause acts of violence or a breach of the peace by the persons to whom it is directed." (Citations omitted; internal quotation marks omitted.) Id., 276–77. Here, we need not decide whether the defendant's language portended physical violence or amounted to fighting words because the defendant's conduct consisted of more than mere speech. In addition to shouting profanities and that he did not want Kalie to enter the residence, the defendant stood in the entrance hallway near the door, and, through that conduct, prevented Kalie from engaging in the admittedly lawful activity of entering 61 Curtiss Road to retrieve her personal possessions.[9] The fighting words limitation, therefore, is not implicated here.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-182 (a) provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (2) by offensive or disorderly conduct, annoys or interferes with another person . . . ."

[2] Although the substitute long form information does not indicate under which subdivision of § 53a-182 (a) the defendant was charged, it specifically alleges that on February 10, 2013, the defendant, with the intent to cause inconvenience, annoyance or alarm, "did *annoy or interfere* with Kalie . . . by denying her access to her dwelling unit and personal possessions," which

tracks the language of § 53a-182 (a) (2). (Emphasis added.) See footnote 1 of this opinion. Furthermore, the court found the defendant guilty of disorderly conduct by relying on the language of § 53a-182 (a) (2), although it did not specifically reference that subsection when explaining its verdict, and both parties in this appeal understand this case as arising under § 53a-182 (a) (2). Accordingly, we analyze the issues raised in this appeal under § 53a-182 (a) (2).

[3] At the conclusion of the state's case-in-chief, the defendant moved for a judgment of acquittal, which the court denied.

[4] We note that the defendant's legal sufficiency claim is limited to whether the state introduced sufficient evidence to support the court's finding that the defendant's conduct was "offensive or disorderly" under the interpretive gloss set forth in *Indrisano*. The defendant explicitly concedes that his conduct "annoyed or interfered with another person" as that phrase was defined in *Indrisano*. At oral argument before this court, the defendant agreed that as a result of his conduct, Kalie "was prevented from doing something *she had a lawful right to do*," namely, enter into 61 Curtiss Road to collect her belongings. (Emphasis added.) See *State* v. *Indrisano*, supra, 228 Conn. 819 (phrase "annoys or interferes with another person" in § 53a-182 (a) (2) means "disturbs or impedes the lawful activity of another person" [internal quotation marks omitted]). Furthermore, the defendant has not briefed the issue of whether the evidence adduced at trial was sufficient to support the court's finding that he harbored the requisite intent "to cause inconvenience, annoyance or alarm . . . ." General Statutes § 53a-182 (a).

[5] The defendant also states, in the headings of his briefs, that "the facts found by the court do not constitute the crime of disorderly conduct," but does not explain or provide any analysis in support of this argument. Accordingly, to the extent the defendant intends this statement to constitute a separate claim or argument, we deem it inadequately briefed and do not address it. See *State* v. *Wahab*, 122 Conn. App. 537, 545, 2 A.3d 7 ("[W]e are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." [Internal quotation marks omitted.]), cert. denied, 298 Conn. 918, 4 A.3d 1230 (2010).

[6] The defendant argues that the court's failure to consider *Indrisano* amounts to an abuse of discretion. As previously noted, however, we interpret the defendant's claim on appeal as a challenge to the legal sufficiency of the evidence, and abuse of discretion is not the standard of review applicable to such claims. See *State* v. *Mann*, supra, 102 Conn. App. 347.

[7] To the contrary, another of the court's factual findings affirmatively suggests that it *did* consider *Indrisano*. It found that, by preventing Kalie from entering 61 Curtiss Road, the defendant's conduct "interfer[ed] with Kalie in a lawful request to . . . retrieve her personal belongings," which mirrors the *Indrisano* definition of the phrase "annoys or interferes with another person" as meaning "disturbs or impedes the lawful activity of another person." (Internal quotation marks omitted.) *State* v. *Indrisano*, supra, 228 Conn. 819.

[8] The defendant's reliance on *State* v. *Scott*, supra, 83 Conn. App. 724, and *State* v. *Mann*, supra, 102 Conn. App. 345, for the proposition that his behavior in this case was not grossly offensive under contemporary community standards, is misplaced. First, those cases primarily concerned other elements of § 53a-182 (a) (2), rather than the "offensive or disorderly conduct" element. See *State* v. *Scott*, supra, 728–30; *State* v. *Mann*, supra, 347. Moreover, to the extent the courts in those cases implicitly held that the conduct at issue was offensive or disorderly under the *Indrisano* standard, they are of little help in the present case, which involves behavior very different in kind. The defendant in *Scott*, while protesting outside of a Planned Parenthood facility, yelled at people entering the facility with a bullhorn and stopped and chased passing cars, causing one car to nearly hit him. *State* v. *Scott*, supra, 725–26. In *Mann*, the defendant became agitated during a meeting, threw a chair toward a window, and then repeatedly slammed the chair on the floor, damaging the carpeting. *State* v. *Mann*, supra, 347–48. Even if, as the defendant contends, the defendants' conduct in *Scott* and *Mann* was "far more egregious" than the defendant's conduct in the present case, that is not a reason for overturning his conviction. Instead, we need only determine whether the evidence in the present case was sufficient to support the court's finding that the defendant's behavior was grossly offensive under contemporary community standards. See *State*

v. *Scott*, supra, 730 (whether conduct is grossly offensive under contemporary community standards is question for fact finder).

[9] "*Indrisano* avoided first amendment difficulties that would criminalize mere verbal speech by clarifying that a conviction under § 53a-182 must be based on a defendant's conduct rather than on a defendant's statements." *State* v. *McKiernan*, 78 Conn. App. 182, 188, 826 A.2d 1210, cert. denied, 266 Conn. 902, 832 A.2d 66 (2003).

---